## SUPREME COURT.

### JEROME B. WIGGINS agt. ADNEY P. DOWNER.

*Jury — Communication between judge and jury in the absence of counsel — Improper communication with the jury by an officer in charge — When not ground for new trial.*

The jury was instructed by the court in its charge to pass upon four questions of fact, and that if they decided all of those questions in favor of the plaintiff their verdict should be for him, but that if they decided in favor of the defendant upon any one of those questions their verdict should be for the defendant. After being out for several hours the jury came into court and stated that they were unable to agree, whereupon they were told by the presiding justice in open court that he did not feel warranted in discharging them until they had given the case further consideration. Upon being asked by one of the jurors to repeat the four propositions which they were to pass upon, the justice outlined them, as he had previously stated them in the charge, and said, "if you find for the plaintiff you must find on each one of these questions in favor of the plaintiff." Neither party was present in person or by counsel, the defendant's counsel having left the city:

*Held,* that it was not an error for which a new trial should be granted for the judge to thus instruct the jury in open court, but in the absence of counsel whose attendance could not have been secured before morning.

An expression to a jury by an officer in charge of an opinion that unless they agreed they would be detained until the next day at noon, although

improper, is not such an irregularity as should avoid the verdict. It does not amount to an illegal restraint.

While the affidavits of jurors will not be received to show their own misconduct, or that of their fellows, they are probably admissible to show the misconduct of the officer having them in charge, but not to show its effect upon their own minds. Jurors should not be permitted to stultify or criminate themselves by swearing that they sacrificed their convictions in order to be relieved from a temporary inconvenience.

*Onondaga Special Term, January, 1884.*

Motion by defendant for a new trial upon the ground that the court instructed the jury in the absence of counsel, and the officer in charge of the jury held an improper communication with them.

The cause was tried at the Oneida circuit on the 21st of November, 1883, and resulted in a verdict for the plaintiff. This motion was argued at the Onondaga special term on the 5th of January, 1884, a stay of proceedings having been granted at the circuit to enable the defendant to move to set aside the verdict upon the grounds above named.

*Charles H. Searle*, for motion.

*J. I. Sayles*, opposed.

VANN, *J.* — Upon the trial of this case the jury was instructed by the court in its charge to pass upon four questions of fact, and that if they decided all of those questions in favor of the plaintiff their verdict should be for him, but that if they decided in favor of the defendant upon any one of those questions their verdict should be for the defendant. The jury retired in charge of an officer late in the afternoon, and at the close of the evening session, at about nine o'clock, came into court and stated that they were unable to agree, whereupon they were told by the presiding justice in open court that he did not feel warranted in discharging them until they had given the case further consideration. One of the jurors then asked the court to repeat the four propositions

Wiggins agt. Downer.

which they were to pass upon, and the justice outlined the four questions of fact as he had previously stated them in his charge. No instruction was given them upon any question of law, except in these words, as taken from the minutes of the stenographer, " if you find for the plaintiff you must find on each one of these questions in favor of the plaintiff." The jury then retired and the court adjourned. Neither party was present in person or by counsel at the time these instructions were given. The counsel for the defendant had left the city where the court was sitting and had gone to his home in Utica. Was it an error for the judge to thus instruct the jury in open court, but in the absence of counsel, whose attendance could not have been secured before morning?

Many decisions have been made in this state bearing somewhat upon the question, but none to which my attention has been called directly in point. *Thayer* agt. *Van Vleet* (5 *Johns.*, 111) arose in justices' court, and it appeared that after the jury had retired they sent for the justice, who went into their room, and on being asked if they could add anything to the charge of the plaintiff replied " no," and left them. It was held not an irregularity for which the verdict ought to be set aside as there was no semblance of abuse and the consent of the parties might be inferred.

In *Bunn* agt. *Croul* (10 *Johns.*, 239) it was held that a justice of the peace could not in the absence of the parties, or without their consent, answer a question as to whether certain evidence had been given when asked by the jury after they had retired to make up their verdict.

In *Taylor* agt. *Betsford* (13 *Johns.*, 487) it was held that a justice of the peace could not after the jury had retired enter their room at their request, but apart from and without the consent of the parties, to answer certain questions.

In *Benson* agt. *Clark* (1. *Cow.*, 258) after the jury had retired the justice at their request, but without the consent of the parties, entered the jury room where certain questions were put to him by the jurors which he did not answer, but

retired. Soon after the jury sent by the constable for a certain paper, which the justice sent to them. It was held that both acts were irregular.

In *Neil* agt. *Abel* (24 *Wend.*, 185) it was held error for the justice without the consent of the parties to permit the jury to use his minutes after they had sent. for them by the constable.

In *Plunkett* agt. *Appleton* (51 *How.*, 469; *S. C.*, 9 *Jones & Sp.*, 169), the judge, without the knowledge of counsel, sent written communications to the jury answering certain questions of law which they addressed to him in writing and sent in by the officer. The verdict was set aside as irregular.

From these cases, and others of like character that might be cited, it is clear that a judge should not privately communicate with the jury, either by entering the room where they are deliberating or by means of written communications. A violation of the rule may afford ground for a new trial, even if no harm is shown to have resulted from it to either party, although this may be doubtful since the decision of *Mahoney* agt. *Decker* (18 *Hun*, 365). The principle upon which the rule rests is that such communications are so dangerous and impolitic that they will be conclusively presumed to have influenced the jury improperly. According to the cases the source of danger is the secret nature of the communications. But in this case all that was said was in open court, and at a time when it was impossible to notify counsel. There was no secrecy, and hence the usual element of danger was wanting. Some of the cases suggest a distinction between instructions in open court, although in the absence of counsel, and a private communication.

In *Watertown Bank* agt. *Mix* (51 *N. Y.*, 559) the judge answered somewhat blindly a written question relating to the evidence sent to him by the jury by writing his answer beneath and returning it, but without informing counsel. JOHNSON, C., in delivering the opinion of the court, said: "It is, in my opinion, better and safer to adhere to the rule, as

Wiggins agt. Downer.

affirmed by the adjudged cases and by what I understand to be the settled usage in this state, that there ought to be no communication between the judge and the jury after they have gone from the bar to consider of their verdict in relation to the oral evidence or his instructions to them, *unless it take place openly in court* or with the express assent of the parties."

While the point was not presented for decision, the plain intimation is that instructions in open court are to be classed with those given with the express assent of the parties.

In *Sargent* agt. *Roberts* (1 *Pick.*, 337, 341) the court said: "We are all of the opinion, after considering the question maturely, that no communication whatever ought to take place between the judge and the jury after the cause has been committed to them by the charge of the court, *unless in open court, and, where practicable, in presence of the counsel in the cause.*"

The point was not presented in this case, but the true rule was suggested.

The trial of a case does not end until a verdict is had, because if there is no verdict, in the eye of the law there is no trial. Therefore counsel who leave court before the verdict is announced, leave before the trial is finished. They do this at their peril, and take the risk of further instructions being given, openly from the bench, so long as court is in session, and the jury still out. While, as a matter of courtesy, but not as a matter of right, it is customary to send for counsel upon the return of the jury for information of any kind; when, by the act of counsel, it is impracticable to do so, the omission cannot be urged as a ground for a new trial. To hold otherwise would enable counsel, either by negligence or design, to compel the court to discharge the jury before they had given the case enough consideration, or to confine them in the jury room until it suited the convenience or inclination of counsel to come into court when further instructionss might be given, and the jury could intelligently resume their delib-

erations. No evil can result from this rule, except that the court would not have the aid of suggestions from counsel, but this would cause less inconvenience than to suspend business. Exceptions could be allowed upon the appearance of counsel, or even upon the settlement of a case, and the time for instructions, as a matter of right, upon request, would have passed. The public nature of the communication would guard it from all danger or impropriety.

In New Hampshire and South Carolina it is well settled that the court may even privately communicate with the jury (*Allen* agt. *Aldrich*, 29 *N. H.*, 63, 74; *Bassett* agt. *Salisbury Manfg. Co.*, 28 *N. H.*, 438, 457; *Shapely* agt. *White*, 6 *N. H.*, 172, 176; *Goldsmith* agt. *Solomons*, 2 *Strobhart*, 296).

While the decisions are more stringent in other states, I find no case at variance with the rule here laid down.

From the affidavits of three of the jurors it appears that after the jury had deliberated for about fifteen hours, they sent word to the court by the officer in charge that they could not agree; that the constable retired for a moment, and upon returning stated that the judge said "they must agree, or he would keep them until to-morrow noon." One of the three jurymen says that the substance of the statement of the constable was, that "the judge said he would not discharge them; that they must agree." Thereupon, the affiants swear, the minority of four compromised with the majority and agreed to the verdict that was rendered, and that they did so to get discharged. A fourth juror swears that the jury stood ten to two all night, and says that he did not hear or know that the constable made any such statement. The officer denies that he made the statement, but intimates that he said something to the jury, without stating what it was. He, however, claims that he strictly kept and observed his oath.

While the affidavits of jurors will not be received to show their own misconduct or that of their fellows, they are probably admissible to show the misconduct of the officer having them in charge (*Thomas* agt. *Chapman*, 45 *Barb.*, 98;

*Hilliard on New Trials*, 337), but not to show its effect
_upon their own minds (*Id.; Thompson & Merriam on Juries*,
431). Jurors should not be permitted to stultify or criminate
themselves by swearing that they sacrificed their convictions
in order to be relieved from a temporary inconvenience.

Communications between the jurors and the officer having
them in charge may furnish ground for a new trial, where
they had a manifest tendency to influence the jury improperly
against the unsuccessful party, or where they were such that
prejudice may have resulted (*Thomas* agt. *Chapman, supra;
T. & M. on Juries*, 428, 431).

No such message was in fact sent to the jury by the court,
and I do not find that any such was delivered. Possibly the
constable or some juryman may have expressed the opinion
that unless the jury agreed they would be detained until the
next day at noon, when it was known that the circuit was to
adjourn for the week. But assume that the constable did
make the alleged statement, and that the jury thought it was
a message from the court, the impropriety of such a pro-
ceeding is conceded, but would it be such an irregularity as
should avoid the verdict? Would it amount to an illegal
constraint? For there must always be some constraint; but
abuse should not be permitted.

The old case of *Green* agt. *Telfare* (11 *How.*, 261), decided
by judge HARRIS in 1853, was expressly repudiated in *Erwin*
agt. *Hamilton* (50 *How.*, 32), decided by judge WESTBROOK
in 1875. In the latter case the jury, after announcing their
inability to agree, were told in effect by the judge that he
could not discharge them, but would return after supper and
wait a reasonable time for a verdict, and if they failed to
agree by that time the court would adjourn until the follow-
ing Monday at three P. M., then distant nearly seventy hours,
when they could bring in a sealed verdict. This was held
to be regular.

In *Slater* agt. *Mead* (53 *How.*, 57), decided at special term
in 1876, the jury, after being out a long time, reported that

they could not agree. The judge said to them: "You must agree upon a verdict. I cannot discharge you until you agree upon a verdict." The verdict was set aside as induced by constraint.

In *Leach* agt. *Wilbur* (9 *Allen*, 212) one of the jurors asked the officer how long the court would keep them together, and he replied that he did not know but they would have to stay till Saturday night. This was held no ground for a new trial, though censurable on the part of the officer.

In *Pope* agt. *State* (36 *Miss.*, 121 [1858]) the officer in charge told the jury, while deliberating in a case of felony, "that unless they decided the case one way or the other they would have nothing more to eat and no water to drink." Some of the jurors understood him to say this by direction of the court, yet it was held no ground for a new trial.

In *White* agt. *Colder* (35 *N. Y.*, 183) it was held, MORGAN, J., dissenting, not to be an error for the judge to refuse to discharge the jury until they had agreed upon their verdict, and that it was wholly within his discretion when to discharge them.

It is in the power of the court, without threatening constraint, to actually constrain a jury by confining them for a long time with nothing to eat. In this case everything reasonable was provided for the comfort of the jury. They had their regular meals. If the remark imputed to the constable had been made by him, its power to constrain would be less than a state of semi-starvation. While the jury might justly complain of the discourtesy in the case supposed, it could not be held that the coercion was illegal or unreasonable. Aside from the question of taste or courtesy, it is no worse to threaten coercion than it is to practice it, yet of necessity it must be practiced, within reasonable limits, by all judges who preside over trials by jury. Twelve honest, independent minds do not readily concur in judgment upon disputed questions of fact. Some effort is necessary in order

to agree.   That effort must be encouraged and required by the court, if the business of the country is ever to be done. If the effort is successful, the result should not be done away with upon a mere question of courtesy, where no one is injured, and the court is satisfied that the verdict is right.

The motion is denied, with ten dollars costs.