WELCOME B. DARLING, Administrator, *vs.* THE NEW YORK, PROVIDENCE & BOSTON RAILROAD COMPANY.

A brakeman was injured by a blow from a railroad telltale, which was sufficiently raised above ordinary freight cars, but not sufficiently raised above some of the cars used by the railroad company.

*Held,* that maintaining a telltale of insufficient height or undue rigidity was a breach of the company's duty to provide safe appliances for its employees.

*Held,* further, that the risk of injury from such a telltale was not one of the ordinary risks of his employment assumed by the brakeman.

*Held,* further, no evidence showing that the brakeman knew the condition of the telltale in question, that the defendant company was liable for the injury.

While a jury was deliberating, the presiding judge, wishing to leave at 5.45 P. M., directed the officer in charge to inquire if there was prospect of an early agreement. The foreman said he would knock by 5.45 and let the court know whether the jury had agreed, whereupon the officer replied, " If you do not, you can take your own time," adding, in joke, " all night, if necessary."

*Held,* that the conduct of the officer was blameworthy, but did not furnish reason for setting aside a verdict in favor of the plaintiff.

DEFENDANT'S petition for a new trial.

*May* 21, 1892. MATTESON, C. J. The defendant petitions for a new trial on several grounds,. of which three only were urged at the hearing, viz.: *first,* that the verdict was against the evidence; *second,* that the court erred in its instructions to the jury; *third,* that the jury were influenced in their decision by a communication to them by the officer in charge of them.

We think the evidence was sufficient to warrant the jury in finding that the deceased was thrown from the train by coming in contact with the lower bar of the telltale; that the telltale, though safe for brakemen upon trains composed of cars of the ordinary height, — the space between the top of a common box-car and the lower bar of the telltale being six feet two and twenty-eight one

---

[1] Submitted the case without agreement.

hundredths inches, — was unsafe for brakemen upon cars of a greater height which have come into use for special purposes, such as cars for the transportation of beef, some of which were a part of the train on the night of the accident to the deceased; that the maintenance of a telltale which was unsafe, by reason of the height of some of the cars in use, and by reason of the weight or rigidity of its frame, rendering it likely to throw brakemen from their feet if they came in contact with it, was a breach of the defendant's duty to provide safe appliances for its employees which amounted to negligence.

We also think that, while the deceased assumed all the ordinary risks incident to his employment as brakeman, the risk of injury from the telltale was not such a risk. A telltale is not in itself a source of danger, since its purpose is to protect by giving timely warning of the approach to a bridge. Moreover, this particular telltale was dangerous only to brakemen upon cars of a greater than ordinary height. It was, therefore, not a manifest danger. The deceased had a right to assume, when he entered upon the employment, that the defendant had performed its duty to provide and maintain safe appliances, and hence that this particular telltale was safe, and, unless it be shown that he had been in some way apprized of the danger and continued in the employment, he is not to be held to have assumed the risk of injury from it. The evidence does not show that he had been so apprized. He had been in the employment of the defendant about five weeks. The train went over the side track under this telltale, on an average, two or three times a week for the purpose of taking on or leaving cars, but only in the night, and though the place was lighted, to a greater or less degree, by an electric light, the darkness and his absorption in the performance of his duties were circumstances not favorable to a close observation of the height of the telltale above the cars; besides, his position as " head middle-man " frequently required him to be upon the ground, when the train was passing under the telltales, for the purpose of throwing switches, and even when upon the top of the train he was in no danger unless he happened to be upon a car of the greatest height. It does not appear that he had previously been upon such a car when passing under the telltale, or had had his attention directed to its

height above such a car, and, being a structure intended for his protection, his attention would on that account also be less likely to be directed to it as a source of danger.

We are of the opinion that the verdict was not against the evidence.

The instructions of the court to the jury were in accordance with the views herein stated. We find no error in them, or in the refusals to give the instructions requested by the defendant.

After the case had gone to the jury, and they had been in their room about an hour deliberating upon their verdict, the judge directed the officer in charge of them to inquire of the foreman if there was a prospect of an early agreement, as he wished to go out to dinner at a quarter of six. The officer conveyed the message to the foreman, who answered that he would knock by quarter of six and let the court know whether the jury had agreed. Thereupon the officer said to the foreman, " If you do not, you can take your own time," and jokingly added, " all night, if necessary." The defendant contends that this remark of the officer operated as a threat to the jury that, unless they agreed before a quarter of six, they would be kept out all night, or at least until they should agree within that time, and was therefore such a constraint put upon them as to render their verdict void; and it further contends that it is not required to show affirmatively that such communication tended to its injury, but that such communication was so dangerous and impolitic that it should be presumed conclusively that harm was done. There are cases which support this claim. *Cole* v. *Swan*, 4 Greene, Iowa, 32 ; *Obear, Executor*, v. *Gray*, 68 Ga. 182. But the weight of authority, and the better opinion as it seems to us, is to the effect that, unless the communication from the officer to the jury had a manifest tendency to influence the jury improperly against the unsuccessful party, or was such that prejudice has resulted to such party, it furnishes no ground for a new trial. Thus, in *Wiggin* v. *Downer*, 67 How. Pr. 65, it was held that the expression to the jury by the officer in charge of them of an opinion that unless they agreed they would be detained until the next day at noon, though improper, was not such an irregularity as should avoid the verdict, and did not amount to an illegal constraint. And, again, in *Leach* v. *Wilbur*, 9 Allen, 212,

it appeared that between four and five o'clock in the morning, the jury having retired to their room about five o'clock of the preceding day, Thursday, one of the jurors asked the officer having them in charge how long the court would keep them together, and he replied that he did not know, but they would have to stay until Saturday, and that a little after five o'clock the jury agreed. It was held that a new trial would not be granted. And see *Reins* v. *The People*, 30 Ill. 256 ; *Price* v. *Lambert*, 3 N. J. Law, 122 ; *Pope & Jacobs* v. *The State*, 36 Mass. 121 ; *McGuire* v. *State*, 10 Tex. App. 125. The officious intermeddling of the officer was highly reprehensible, and might have subjected him to punishment; it was a violation of his duty and of his oath; but it appears to have been thoughtless, without any design to favor either party, and it had no manifest tendency to prejudice the defendant; nor does it appear that prejudice has resulted from it to the defendant. The defendant, it is true, has produced the affidavit of a juror to his belief that the message of the court and the remark of the officer influenced the jury in giving a verdict for the plaintiff, as, immediately after, certain of the jury who had been for the defendant changed and agreed to a verdict for the plaintiff. But, apart from the consideration that the affidavit of a juror is not competent evidence to prove what takes place in the jury room for the purpose of impeaching the verdict, the affidavit is only to the belief of the juror based upon a fact by no means conclusive. .

Defendant's petition for a new trial denied and dismissed.

*Augustus S. Miller & Arthur L. Brown*, for plaintiff.

*Lorin M. Cook*, for defendant.