[Kansas City, Memphis and Birmingham R. R. Co. v. Phillips.]


# Kansas City M. & B. R. R. Co. v. Phillips.

| 98 | 159 |
| 102 | 154 |
| 102 | 302 |

| 98 | 159 |
| 108 | 285 |

| 98 | 159 |
| 119 | 77 |
| 119 | 572 |

| 98 | 159 |
| 143 | 193 |

*Action by Passenger against Railroad Company for Damages for Personal Injuries received in Collision.*

1.  *Objection to evidence; when too late.*—An objection to evidence, by motion to exclude, comes too late when not made until the evidence is closed, and the case partly argued.

2.  *"Corporate negligence;" negligence of employee, the negligence of the company.*—An instruction, in an action against a railroad company for personal injuries, that there is no evidence that defendant was guilty of "corporate negligence," is properly refused since when the injured person is a third party, and not an employee of the company, the negligence of any agent is the negligence of the company.

3.  *Charge on measure of damages; when erroneous.*—Where the evidence shows that, before the injury, plaintiff earned $100 per month, and that he has been unable to do any work since, an instruction that only nominal damages for the difference in such earning capacity can be allowed is properly refused.

4.  *"While in the employ;" what time it embraces.*—The contract of a railroad engineer with a railroad company not to go into saloons or drink whiskey while in the "employ" of the company, embraces or covers the time between trips—or time from his arrival one day to his departure the next.

5.  *Punitive damages against master for negligence of servant.*—Where there is evidence tending to show acts of negligence on the part of the servants of the defendant corporation, it was a question for the determination of the jury whether they would award punitive damages against the corporation for such negligence, even though they should find that said corporation was otherwise blameless.

6.  *Mortality tables; judicial notice of.*—The court will take judicial notice of mortality tables showing the natural expectancy of duration of one's life at a given age.

7.  *Charges given by consent of parties.*—Where defendant requests certain instructions, which are refused, and so marked by the court, but afterwards plaintiff consents that they be given, and the court so marks and gives them, the defendant can not complain.

8.  *New trial; newly discovered evidence.*—A new trial on the ground of newly discovered evidence will be denied, though such evidence is material, where it appears that, within a week after verdict, petitioner's counsel, by his own diligence, and not by accident or voluntary disclosure, discovered the same.

9.  *Misconduct of officer ground for new trial*—Where misconduct on the part of the jurors, or the officers having them in charge, is shown, and it reasonably appears, from the nature of the misconduct and the attendant circumstances, that the verdict may have been unlawfully influenced thereby, a new trial ought to be granted.


APPEAL from Birmingham City Court.
Tried before the Hon. W. W. WILKERSON.

This action was brought by the appellee, M. M. Phillips, against the Kansas City, Memphis & Birmingham Railroad Company, to recover damages for personal injuries received by the plaintiff in a collision of defendant's trains, alleged to have been caused by the defendant's negligence.

The material facts may be summarized as follows: Appellee was on a train of the appellant as a passenger. That, through a mistake of the defendant's engineer, the train left the passenger station at Birmingham, leaving the conductor and a sleeper. The engineer did not discover the mistake until he reached Ensley, five or six miles from Birmingham. Upon discovering his mistake at Ensley, the engineer, after waiting about a minute or two, started to back his train to Birmingham. There was no light on the rear coach, and he was backing at the rate of 15 to 30 miles an hour. That when they had gone back about two miles and a half, in the direction of Birmingham, the train on which plaintiff was a passenger collided with the extra freight, which was ordered to move out in rear of the passenger train, and by this collision the plaintiff was injured. The testimony showed that the passenger train of defendant, going west, usually waited at night an hour for the Georgia Pacific passenger train, when it was behind time, in order to carry a sleeper which the Georgia Pacific train brought in. That on the night of the accident the Georgia Pacific was one hour behind time, and that, as the Georgia Pacific train was coming into the city, when about two or three blocks from the passenger depot, J. J. Mullins, night station master of the depot, signaled the engineer of the defendant's train, Russell, to pull down out of the shed. The signal was given by Mullins in order that the Georgia Pacific, coming in, could come in on the same track; but the engineer of the defendant mistook the signal for that of its conductor, and pulled out, leaving the conductor and the sleeper behind. Mullins and the conductor of the defendant were dressed alike, and the signal given by Mullins was the same kind of a signal that the conductor would have given, to pull out. Upon the examination of Slade, who testified that he was foreman in the mechanical department of the defendant's road, and that he had charge of the locomotives, engineers, and firemen, and had authority to employ, suspend, and discharge engineers, the plaintiff asked him the following question: "State whether or not Russell was discharged from the service of the Kansas City Memphis & Birmingham road for drinking, or was ever suspended for drinking." Defendant objected to this question because it was illegal, irrelevant and immaterial. Upon the

counsel stating that they expected to connect· the evidence with evidence tending to show that Russell was drinking at the time of the accident, the court overruled the objection, and allowed the evidence, and the defendant duly excepted. The witness said, "Yes, sir; he was."

Upon the cross-examination of Briggs, who was the master mechanic of the defendant, he testified that "there is a clause in the blank application made by engineers for employment with the defendant in which ·he pledges not to go into saloons, or drink whiskey, while he is in the employ of the defendant." Russell also testified that this pledge was in force when the accident occurred. There was evidence introduced tending to show the plaintiff's earning capacity before the injury, and his condition after the injury. Upon the introduction of all the evidence the defendant requested the court to give the following written charges, and separately excepted to the refusal to give each of them as asked : (1. "There is no evidence that tends to show that the defendant has been guilty of any corporate negligence that contributed to the collision." (2) "Under the evidence in this case the jury are not authorized to award more than nominal damages for the difference in the earning capacity of the plaintiff before and after his injury, caused by his injury, even if you find there is such difference in plaintiff's earning capacity." (3) "The court charges the jury that when Russell turned his engine over to a hostler on the evening testified to by Slade, and came out on the street, went into Wise's saloon, and took a drink testified to by Slade, Russell was not in the service of the defendant, and his so doing was not a violation of the obligation which Russell took when he was employed by the defendant." (4) "The jury are not authorized to award punitive damages in this case." (5) "Although there are tables showing the present value of annuities, at eight per cent. interest, on a single life, at plaintiff's age, yet the court can not take judicial notice of what such tables show; and, there being no evidence to enlighten you on this subject, I charge you that under the evidence in this case, you can not award the plaintiff any damages for his future inability to work and earn money, even if you find there is such future inability." (6) "To determine the present value of annuity for a period not longer than plaintiff's expectancy of life, considering the uncertainty of life, and that plaintiff may die at any time estimating such annuity at what his power to labor and earn money has been lessened by reason of his alleged permanent injury, if it has been so lessened, involves an intricate and

11-98.

difficult calculation; and, if you can not make such calculation, you can not award the plaintiff any damages for his future inability to work and earn money, if you believe he has any such disability." The defendant also requested the court to give to the jury the five written charges which are hereinafter copied. Upon the court's refusal to give each of these charges, and after he had written in ink on each of them the word "Refused," the counsel for plaintiff stated in open court that they would consent that each of the charges that were refused should be given to the jury. Thereupon the court erased, by drawing a pencil through it, the word "Refused," and wrote upon each of the charges the words "Given by consent." The defendant separately excepted to the said action of the court in regard to each of said written charges so requested by the defendant. Said charges are as follows; (1) "If the jury should find for the plaintiff, in estimating the plaintiff's damages for his diminished capacity to earn a livelihood by reason of his injury, if the jury believe he is entitled to any such damages, the measure of such damages would be the present value of an annuity equal in amount to the amount the jury find to be the annual diminution in plaintiff's capacity to earn a livelihood by reason of his injury, for a period not longer than the expectancy of plaintiff's life; and unless the jury can determine from the evidence, or their own knowledge, what the present value of such an annuity would be, they are not authorized to award the plaintiff any damages arising from such diminished capacity to earn a livelihood." (2) "The court charges the jury that when Russell turned his engine over to a hostler on the evening testified to by Slade, and came out on the street, and went into the saloon of Wise, and took the drink testified to by Slade, Russell was not in the service of defendant." (3) "It is the duty of the jury, before they award plaintiff any damages for his diminished capacity to earn a livelihood by reason of his injury, if the jury believe from the evidence that the plaintiff is entitled to such damages, to calculate the present value of an annuity equal in amount to the amount the jury may find from the evidence to be the amount which would compensate plaintiff for his diminished capacity to earn a livelihood for a period of one year, and continuing during a period not greater than the plaintiff's expectancy of life, considering the uncertainty of life, and the fact that plaintiff may die at any time; and if the jury are unable, from the evidence and their own knowledge, to calculate the present value of such an annuity, they are not authorized to award plaintiff any damages for such dimin-

ished capacity to earn a livelihood." (4) "The measure of damage for plaintiff's diminished capacity to earn a livelihood, if the jury believe the plaintiff is entitled to such damage, is such a sum as, if put out at compound interest at the legal rate, would just suffice to pay the plaintiff an annuity equal in amount to the amount the jury may find from the evidence would compensate the plaintiff for one year for his diminished capacity to earn a livelihood, and for a period of time not greater than the plaintiff's expectancy of life, considering the uncertainty of life, and the fact that the plaintiff may die at any time." (5) "If you should find for the plaintiff, in estimating the damages the plaintiff would be entitled to for his future inability to work and earn money, I charge you he would be entitled to the present value of an annuity for a period not longer than his expectancy of life, estimating such annuity at what his power to labor and earn money has been, lessened by reason of his alleged permanent injury; and, there being no evidence showing what the present value of such an annuity is, you can not award the plaintiff any damages for his future inability to work and earn money." After the rendition of the judgment the defendant moved the court for a new trial, assigning several grounds therefor. The principal grounds for the motion for a new trial are sufficiently stated in the opinion. The court overruled this motion, and the defendant duly excepted.

HEWITT, WALKER & PORTER, for appellant.—1. The court erred in its refusal to give the defendant (appellant) a new trial.—*State v. Cucuel,* 2 Vroom, 249; *Johnson v. Witt,* 138 Mass., 79; *Commonwealth v. Roby,* 29 Mass., 496; *Johnson v. Root,* 2 Cliff (U. S.) 108–128; American & Eng. Ency. 16 Vol., 519; *Phoenix Ins. Co. v. Moog,* 81 Ala. 343, and authorities there cited; *Crafts v. Hall,* 4 Ill., 131; *Read v. City of Cambridge,* 124 Mass. 467; *Dunn v. Roberts,* 1 Am. Dec. 137; *Woodward v. Leavitt,* 107 Mass., 453; *Commonwealth v. White,* 147 Mass., 76; *Watertown Bank & Loan Co. v. Mix,* 51 N. Y. 558; *Pierce v. Rehfus,* 35 Mich., 54; *Allen v. Woodson,* 50 Ga., 53; *Holmes v. Roper,* 10 N. Y. S., 288; *Goldsworthy v. Town of Linden,* 43 N. W. Rep., 656; *Sistore v. Olcott,* 5 N. Y. S., 114; *Klein v. Gibson,* 2 S. W. Rep., 116; *VanHorn v. Redmond,* 25 N. W. Rep., 881; *Alexander v. Solomon,* 15 So. Rep. 906; *Lindley v. State,* 11 Tex. App., 283; *Wilcox Silver Plate Co. v. Barclay,* 48 Hun. (N. Y.), 54; Note to 16 Am. & Eng. Ency. Law, p. 581, and cases cited; *Clark v. Carter,* 58 Am. Dec., 485; *Jessup v. Cook,* 6 N. J., L., 442; *Dundee Mfg. Co. v. Van Piper,* 33 N. J., L., 152.

[Kansas City, Memphis and Birmingham R. R. Co. v. Phillips.]

2. The court erred in refusing the motion of appellant to exclude the testimony of Dr. Wilson, that, "I am the surgeon of the Louisville & Nashville R. R. Company."—1 Thompson on Trials, Section 715; *Judge v. Stone*, 44 N. H., 593; *Selkirk v. Cobb*, 13 Gray, 313.

3. The charge should have been given, as requested by appellant, that there was no evidence tending to show any corporate negligence.—*Fenney v. Northern Pacific R. R. Co.*, 12 Am. & Eng. R. R. cases, 17; *Baltzell v. Moretz*, 85 Ala. 123; *Ala. Gold Life Ins. Co. v. Mobile Mutual Ins. Co.*, 81 Ala. 329; *Hames v. Brownlee*, 71 Ala. 132.

4. The plaintiff was entitled at most only to nominal damages under the evidence; there was no evidence tending to show the difference between his earning capacity before and since his injury.—*Savannah R. R. Co. v. Stewart*, 71 Ga., 427, and cases cited; *Central R. R. Co. v. Bowson*, 64., 479; *Pennsylvania Co. v. Lilly*, 4 Am. and Eng. R. R. Cases, 540; *North Chicago Rolling Mill v. Morrissey*, 18 Am and Eng. R. R. Cases, 47.

5. In the absence of annuity tables as evidence, the jury were without the means of estimating the value or amount of plaintiff's damage growing out of his future inability to work and earn money. The court, therefore, erred in refusing charge 5, requested by defendant.—*Savannah R. R. Co. v. Stewart*, 71 Ga., 427, and cases cited; *Little Rock & Ft. Smith R. R. Co. v. Barker*, 19th Am. & Eng. R. R. cases, 208, dissenting opinion; *C., B. & Q. R. R. Co. v. Sykes*, 2 Am. and Eng. R. R. Cases, 254; *Kentucky Cent. R. R. Co. v. Goslineau*, 7 Ky.; *L. & N. R. R. Co. v. Trammell*, 9 So. Rep., 870; *North Chicago Rolling Mill v. Morrissey*, 18 Am. and Eng. R. R. Cases, 47.

6. The court erred in giving charges "by consent" after having refused them.—*Miller v. Hampton*, 37 Ala. 342; *Tyree v. Parham's Executor*, 66 Ala. 424; *Holley v. State*, 75 Ala. 1; *Bush v. Glover*, 47 Ala. 167; *Polly v. McCall*, 37 Ala., 20; *(Edgar) Nat Gray v. State*, 43 Ala. 53.

BOWMAN & HARSH, for appellee.—1. A witness may express an opinion as to the speed of a train.—(Assignments of error 1, 2, & 13.)—*K. C. M. & B. R. R. Co. v. Crocker*, (present term); Patterson's R'way Ac. Law, p. 424.

2. There was no error in allowing testimony as to whether or not the lump was on plaintiff's shoulder before the accident, or in asking witness who had known him before and since whether they noticed any lump before, and whether or not they notice it now.—(Assignments of error 4, 5, 6, 7, 8,

[Kansas City, Memphis and Birmingham R. R. Co. v. Phillips.]

9, 10, 11, 12.)—*Mattison v. State*, 55 Ala. 232 ; *Ward v. Reynolds*, 32 Ala. 384.

3. A medical witness may be asked if there is any chance for him to be imposed on in making a certain diagnosis, especially when defendant is attempting to show that the patient was feigning.—(Assignment 14).

4. It is competent to show that on the evening of taking out his train the engineer was drinking, and was pretty full, and that witness knew him.—(Assignments 15, 16).

5. It is competent to show that the engineer had been discharged for drinking and was reinstated.—(Assignments 17 and 18.)—*Patterson v. S. & N. Ala. R. R. Co.*, (Ala.) 7 So. Rep. 437.

6. It is competent to show on cross examination if witness who had testified as to engineer being sober, that she was engaged to be married to him, and to ask witness Wilson if he is not surgeon for the L. & N. R. R. Co.—(Assignments 17 and 18.)—*Yarbrough v. State*, 71 Ala. 376 ; *Strauss v. Mertief*, 64 Ala. 299 ; 6 point in *Tuscaloosa S. & A. Ass. v. State*, 58 Ala. 54.

7. Defendant had no right to have jury instructed that it was not guilty of any corporate negligence.—(Assignment 22.)—*S. & N. Ala. R. R. Co. v. Huffman*, 76 Ala. 492 ; *R. R. Co. v. Larkin*, 47 Md. 155 ; *R. R. Co. v. Hurst*, 36 Miss. 660 ; *R. R. Co. v. Burke*, 53 Miss. 200 ; *R'way Co. v. Dunn*, 19 Ohio St., 162 ; *Beale v. R'way Co.*, 1 Beale, 568 ; *Samuels v. Evening Mail Co.*, 75 N. Y., 604 ; 9 Hun,, 288 ; *W. U. Tel. Co. v. Eyser*, 2 Col. 141 ; *R. R. Co. Rogers*, 38 Ind. 116 ; *Taylor v. Ry. Co.*, 48 N. H., 404 ; *Belknap v. R. R. Co.*, 49 N. H., 358 ; *Goodard v. Ry. Co.*, 57 Me., 202 ; *Ex. Co. v. Brown*, 7 So. Rep., 318.

8. A charge that under the evidence plaintiff was not entitled to more than nominal damages for the difference in earning capacity even though the jury believe there was a difference, is bad.—(Assignment 25.)—*Howard Oil Co. v. Davis*, (Tex.) 13 S. W. Rep., 665 ; Thompson on Neg. Vol. 2, p. 1257.

9. A charge that when Russell took a drink in Wise's saloon he was not in the service of defendant and his so doing was a violation of his pledge, was properly refused. (Assignment 24).

10. The court properly refused to charge the jury that there could be no award of punitive damages (25) and properly gave plaintiff's charge that if the engineer's intentional negligence brought about the injury, punitive damages could be awarded (33). See authorities under proposition 7. *Quinn v. South Carolina R'way Co.*, (S. C.) 7 S. E. Rep. 614.

[Kansas City, Memphis and Birmingham R. R. Co. v. Phillips.]

11. The defendant had no right to have the jury charged that annuity tables were necessary to their calculations or that the calculations were "intricate and difficult," and unless they could perform them, they could award no damages for diminished earning capacity.—(Assignment 26.) 3 Brick. Dig. p. 114; *Ib.* 113.

12. The court committed no error of which appellant can complain in writing refused on certain charges and subsequently writing, on same charges given by consent after drawing pencil mark through the word refused.—*A. G. S. R. R. Co. v. Arnold,* 80 Ala. 600.

13. There was no error of which appellant can complain in excluding affidavit of Wood, and parts of affidavits of W. H. Alexander, A. D. Allen and G. M. Allen (32, 36, 37, 38.) Thompson & M. on Juries, Sec. 362. *Dorr v. Fenno,* 12 Pick. 521, *Shepherd v. Inhabitants of Camden,* 82 M. E. 525; *State v. Morris,* 6 S. Rep. 639.

14. The court below did not err in refusing a new trial. *Cobb v. Malone,* 9 S. Rep. p. 738; *R. R. Co. v. Lewis,* 84 Ga. 211; (a) on the ground of misconduct of officer or jury. *Leach v. Wilbur,* 9 Allen (Mass.) 212; Thompson on Trials, sec. 2616; Thompson & Merriam on Juries, sec. 349, sec. 362; *Dorr v. Fenno,* 12 Pick. 521; *State v. Wart,* 51 Iowa, 58; *People v. Dunn,* 80 Cal. 34; *Gurney v. R'y. Co.,* 41 Minn. 223; *Spinney v. Bowman,* (Me.) 10 A. Rep. 252; *Fullian v. City of Muscature, Iowa,* 30 N. W. 861. (b.) Newly discovered evidence.—*Redmond v. Stepp,* (N. C.) 6 S. E. Rep. 727; *People v. Sutton,* (Cal.) 15 Pac. Rep. 86. Evidence cumulative.—*Erskine v. Druffy,* 76 Ga. 602; *Carder v. Bank of West Virginia,* 11 S. E. Rep. 716; *Scharherl v. R'y. Co.,* 43 N. W. Rep. 847; *Morgan v. Bell,* 41 Kan. 345; *Smith v. Watson,* (V.) 1 So. Rep. 96; *Monroe v. Moody,* (Ga.) 2 S. E. Rep. 688; *Hart v. Jackson,* (Ga.) 3 S. E. Rep. 1. Probability of change of verdict.—*Grace v. McArthur,* (Wis.) 45 N. W. Rep. 518; *Brady v. City of New York,* N. Y. Sup. Ct., 457; *Chicago etc. R. R. v. Sullivan,* (Ill.) 17 N. E. Rep. 460. Proper diligence not used.—*Dyke v. De Young,* (Ill.) 24 N. E. Rep. 520; *Pamberton v. Johnson,* (Ind.) 15 N. E. Rep. 801. Excessive damages.—*Reed v. St. Paul & C. Ry. Co.,* (Iowa) 37 N. W. Rep. 149; *T. P. Ry. Co. v. Davidson,* 4 S. W. Rep. 636; *Fitch v. Broadway & S. A. R. Co.,* 10 N. Y. S. 225; Sedgwick on Damages, (8th Ed.) secs. 1320, 1321; *Bowers v. Union P. R. R. Co.,* 7 Po. Rep. 251; s. c. 4 Utah, 215; *Nadon v. White River Lumber Co.,* (Wis.) 43 N. Y. R. 1135; *Sobieskie v. St. P. & D. R. Co.,* 42 N. W. Rep. 863; s. c., 41 Minn. 169; *Murrey v. Brooklyn R. R. Co.,* 7 N. Y. S. 900; *Knapp*

*v. Sioux City & P. Ry. Co.,* (Iowa) 32 N. W. 28 ; *L. & N. R. R. Co. v. Mitchell,* 8 S. Rep. 706; *Dougherty v. Mo. R. R. Co.,* 8 S. W. Rep. 900 ; *Ridenhour v. K. C. Cable Co.,* 13 S. W. Rep. 889; *Morrison v. Broadway S. A. R. Co.,* N. Y. S. 436; *Jordan v. N. Y. & H. R.,* 9 N. Y. S. 506; *Griffieth v. Clift,* 11 Pac. Rep. 609 ; *Pence v. Chicago R. I. & P. Ry. Co.,* 41 N. Y. Rep. 686 ; *Tex. & Pac. R. R. Co. v. Cagle,* 14 S. W. Rep. 89; *Western & Atlantic R. R. Co. v. Lewis,* 10 S. E. Rep. 736; s. c., 84 Ga. 211.

HEAD, J.—This is an action for damages for personal injuries sustained by appellee as a passenger, by a collision of trains on appellant's road. On the main case, the questions arising for decision grow out of exceptions to testimony and charges given and refused. Appellant's counsel insist specially, in argument, upon one only of the objections to testimony, and we will not comment on them, in detail. We have carefully examined and considered them all and find none well taken. If it was illegal for plaintiff to prove by the witness, Dr. Wilson, on cross-examination, that he was the employed physician of another railroad company, no objection was made to it until after the evidence was closed and the case partially argued, when defendant moved to exclude it. We think it was then too late to insist, as a legal right, upon its exclusion. If it was illegal, its exclusion rested in the discretion of the court, at that stage of the trial.—1 Thompson on Trials, § 715.

The first charge requested by the defendant was that there is no evidence which tends to show that the defendant has been guilty of any corporate negligence that contributed to the injury. For a disposition of this question, we refer to what we said in reference to a similar charge in the case of *K. C., M. & B. R. R. Co. v. Sanders Admr.,* at the present term. This charge was properly refused.

There was evidence tending to show that plaintiff prior to injury was capable of earning $100.00 per month, and that his services were worth that much; and that after the injury he was unable to attend to any business or do any work up to the time of the trial. Wherefore the second charge requested was manifestly bad.

The testimony of the witness Briggs tends to show that Russell, the engineer of defendant, who was charged with negligence causing plaintiff's injury, was under a contract and duty not to go into saloons or drink whiskey while in the "*employ*" of defendant. The defendant's third charge would construe this to mean that Russell was not in the

employ of defendant during the interval from his arrival in Birmingham—a terminus of the road—on one day, until his departure therefrom, on the next, in the service of the company. Obviously, such is not the meaning of the contract.

Under the facts of this case, it was, at least, a question for the jury whether punitive damages should be awarded or not. It has been too long and well settled to be now overturned that punitive damages may be awarded against the master for the acts and omissions of the servant although the master, aside from the conduct of the servant, may be entirely blameless. We are not unmindful of the forcible argument of appellant's counsel in opposition to this view. We have duly considered the argument, but can not follow it without departing from the general current of the law as it is declared every where, so far as we are advised. The fourth charge was therefore properly refused.

In *McDonnell v. Ala. Gold Life Ins. Co.*, 85 Ala. 401, we held that the court will take judicial notice of the mortality tables showing the natural expectancy of duration of one's life at a given age. On that authority charge five was bad and properly refused.

We ruled charge six bad in *L. & N. R. R. Co. v. Davis*, at the present term, and have no doubt of the correctness of that ruling.

We have carefully examined charges numbered 1, 2, 3, 4 and 5 which the court at first refused and afterwards gave by consent of the plaintiff, marking thereon "given by consent," and find that each of them was properly refused. The defendant can not complain, therefore, that they were afterwards given by consent, and so marked. We do not declare what our ruling would be if a good charge had been so refused and then given and so marked.

The defendant moved the court for a new trial on several grounds specified in the motion, among them, newly discovered evidence, and misconduct of the jury, and the bailiff having them in charge. 1. The newly discovered evidence relied on, as set out in the affidavits in support of the motion, is certainly very material to the inquiry of the extent of plaintiff's injury, and it is not cumulative of other testimony introduced by the defendant. The real question upon this branch of the motion is, whether that degree of diligence which the law exacts to discover and produce the evidence at the trial was exercised. The law is very strict in this regard. Trials and judgments will not be set aside and litigation revived to let in new evidence, except upon a clear showing of the importance of the evidence, and a high de-

gree of diligence on the part of the movant to discover and produce it on the trial. The new evidence consists in the testimony of several persons going to show that the plaintiff suffered, long before the railroad collision, with the urinary troubles which he claimed, in the law suit, resulted from injuries received by that collision. The affidavit of diligence is made by one Crater, an attorney and claim agent of the defendant, who stated that almost continuously since the accident, on the 25th day of October, 1890, to the time of the trial, in June, 1891, he and others employed by him were diligently engaged in investigating the claims and demands of the various persons claiming to have received injuries in the collision, and diligently inquired into and investigated as to the injuries plaintiff claimed to have received, whether actually received at said time, or at all, or were injuries and complaints or ailments with which he had been suffering or afflicted long prior to the date of said collision; that about sixty days prior to the date of the affidavit, he first learned (except such information as given by the complaint in the cause) that plaintiff would testify and attempt to prove he had urinary diseases on account of said collision, such as inability to retain urine in his bladder and uncontrolled dribbling therefrom, but was unable to, and did not ascertain what he would claim or testify concerning said diseases in the full detail thereof, until he heard him testify on the trial; that about sixty days prior to the trial, he had been continuously engaged in investigating, personally, and by employing others, the truth or falsity of plaintiff's claims, and interviewed and enquired of a large number of citizens of Walker county, neighbors of plaintiff, and was unable to find, prior to the trial, any one who had or would admit that he had any information as to said urinary disease; that he has been continuing his investigation, personally, and through, others since said trial, and on June 25th, 1891, was informed for the first time that plaintiff had been for the past ten years and longer, at times suffering from urinary diseases and voluntary dribbling of the urine, and inability to retain the same in his bladder, and loss of sexual power; that he is now informed and believes, and states that defendant can prove by six or eight or more reputable and creditable persons, that plaintiff had been afflicted as above stated. He also stated that before the trial, he inquired of about twenty-one citizens of Walker county concerning said urinary diseases. Crater procured the affidavits of two persons, J. R. Martin and T. W. Washington, who are neighbors of plaintiff, and who made oath as to the urinary troubles with which

[Kansas City, Memphis and Birmingham R. R. Co. v Phillips.]

plaintiff had long suffered, and states that he had not been able to procure the affidavits of the others for the want of time.

It will be observed the complaint, which was filed January 10th, 1891, alleges that plaintiff was rendered incapable of controlling his urine, and that his vital power was greatly lessened or destroyed. On that subject, he testified on the trial, to no more than this. The trial was concluded on the 19th day of June, 1891. The motion for a new trial was heard June 30th, 1891. The dates of the affidavits are not given, though they were in possession of counsel when the motion was docketed June 27th, 1891. It thus appears that, within the space of a week, or probably less, after the verdict, Crater was, by means of his own diligence, enabled to find six or eight credible witnesses who will testify to the facts stated, and to obtain the affidavits of two of them. It is expressly shown that he discovered this testimony by his diligence, and not by accident, voluntary disclosures or other fortuitous circumstance, after all diligence on his part had been exhausted. It is very clear to our minds, that he was stimulated by the verdict to a point of effort which he ought to have reached, but did not, before the trial In such cases, new trials will not be awarded to let in the newly discovered evidence.

2. Misconduct of the bailiff and jury: When the jury had been out eight or nine hours considering of their verdict, there was a knock at the door of the jury room, and Thomas F. Parker, who had charge of the jury as one of the sheriff's deputies, went and unlocked the door and opened it from twelve to eighteen inches, when one of the jurors inquired of him where the judge was, saying the jury could not agree; and, when told by Parker that the judge was not in the court-house, the jury, or some of them, asked that he be sent for, as there was no chance for them to agree upon a verdict; Parker replied, he could not send for the judge; that the judge had ordered him to keep them together and carry them to supper, and if they could not agree by 10 o'clock, he would carry them to the hotel for the night. Some of the jury then asked Parker how long the judge would keep them together if they did not agree on a verdict, whereupon Parker said he did not know, and had nothing to do with it, but that he supposed the court would keep them until Saturday night, or that he might keep them together until the adjournment of court. The conversation took place at night, about 8 o'clock. There was no one in the court-room but Parker and the clerk, the jury being in the jury

room, but some of them could be seen at the door. One of the jurors, as shown by his affidavit, understood Parker to say that if they did not agree on a verdict the judge would keep them together until Saturday, if not longer. Others understood that he said the judge would keep them together eight days; and it was reported by those who were at or near the door, to the body of the jury in the jury room, that the bailiff or clerk had said they would be kept together eight days, unless they agreed on a verdict. Between 9 and 10 o'clock the jury agreed on a verdict and returned it to the clerk. They had been engaged in the trial of the cause eight days, and during that time one of the jurors had a very sick daughter, about two years old. An uncle of the child was also a member of the jury. Several of the jurors make oath that prior to said conversation there appeared no prospect that the jury would agree on a verdict.

The question now is, do these facts entitle the defendant to a new trial? It is stated as a rule, in 16 Am. & Eng. Encyc. Law 519, that, "Misconduct, as the term is used in connection with the subject under discussion (new trials) is any unlawful behavior of those entrusted, in any degree, with the administration of justice, by which the rights of the parties and the justice of the case may have been affected. It need not be shown, necessarily, that the misconduct relied on as ground for a new trial actually controlled or determined the verdict, if it is made apparent that the verdict might have been affected by it." This text is sustained by the authorities cited in its support. In *Johnson v. Root*, 2 Cliff (U. S.) 108, it is said: "Irregularity on the part of the party charged, or of the jury must be satisfactorily proved, in order to lay the foundation for the interposition of the Court; but when the irregular conduct is established it is not necessary that it should certainly appear that it influenced the jury. In that state of the case, it is sufficient that the irregularity appears to be of a character that it might have affected the impartiality of the proceedings. Such was the rule laid down in *Commonwealth v. Toby*, 12 Pick. 520, and it appears to be correct." In *Johnson v. Witt*, 138 Mass. 79, it was said that the law will not inquire what was the effect of intermeddling with the jury, if it was of such a nature as to have any tendency to affect the verdict injuriously to the party against whom it is found. See also *Read v. Cambridge*, 124 Mass. 567. In Thompson & Merriam on Juries, § 362, it is stated as a general rule: "Whether communications between members of the jury and the officer having them in charge will avoid

the verdict, will depend upon the nature of the communications. Where they are such that it is obvious that no prejudice could have resulted from them, they will not afford ground for a new trial; but if the communications were such that prejudice *may* have resulted the rule is different. The same author also lays down as a general rule in § 349, citing many authorities, the following: "The Courts generally agree that where the interference of strangers with the jury has not been promoted by the prevailing party, has not been attained with corruption and it does not reasonably appear that substantial prejudice has resulted to the party complaining, the verdict will not be disturbed for this reason, whether the cause be civil or criminal, capital or otherwise." In Thompson on Trials, § 2556, it is said: Communications between the jurors and officers having them in charge rest on much the same grounds as communications with strangers, though possibly viewed with greater jealousy. Such communications will not afford ground for new trial where it is obvious that no prejudice resulted; otherwise where prejudice may have resulted."

In Thompson & Merriam on Juries, § 349, sub-div. 3, it is said: "In civil cases the Courts generally hold that, in order to set aside a verdict because improper communications have been had between members of the jury and third persons, the affidavits must do something more than raise suspicions that improper influence *might* have been brought to bear on the jury. A verdict which twelve men have rendered under the solemnity of their oaths, is certainly entitled to some consideration; and it would not only be unjust to the party who has obtained it to set it aside for some irregularity which has happened without his fault, unless prejudice clearly appear; but it would be entirely opposed to the policy of the law, which favors the ending of litigation and the quieting of controversies."

The cases wherein the application of these general principles has been attempted are inharmonious. In *Slater v. Mead*, 53 How. 57, the jury after being out a long time, reported that they could not agree. The judge said to them: "You must agree upon a verdict. I can not discharge you until you agree upon a verdict." The verdict was set aside as induced by constraint. But in *White v. Calder*, 35 N. Y. 183, it was held not to be error for the judge to refuse to discharge the jury until they had agreed upon their verdict, and that it was wholly within his discretion when to discharge them.

[Kansas City, Memphis and Birmingham R. R. Co. v. Phillips.]

In *O'Bear v. Gray*, 68 Ga. 182, the bailiff who had the jury in charge, after they had been out for some time considering of their verdict, being very restive and impatient, and while they were standing about five to seven, told them that in his opinion the judge would keep them out a week or compel them to agree. The Court said : "According to the recorded judgment of this Court in the case of *Gholston v. Gholston*, which was a libel for divorce and reported in 31 Ga. 625, it was held that a jury was improperly influenced by the Sheriff's telling them that unless they speedily agreed upon a verdict, the judge would carry them to Elbert county, and that he was making preparations for that purpose. The deliberations of a jury are not to be interferred with whilst they are considering the law and the testimony which must alone control their verdict. They are by no means to be influenced by the fear of a week's confinement, to alarm them into an agreement. Such a suggestion, even by the very officer in whose custody they are placed, would be highly improper and especially so in view of the fact that they are thus placed to prevent every outside influence by word, sign or speech, from affecting unlawfully their finding." And it seems, the Court deemed the action of the bailiff in this case alone sufficient ground for a new trial, but there were other concurrent causes and the ruling in favor of a new trial was based upon all.

In *Leach v. Wilbur*, 9 Allen (Mass.) 212, the jury had retired about 5 P. M. on Thursday, and on Friday morning, between 4 and 5 o'clock, one of them asked the bailiff how long the Court was going to keep them there, to which the officer replied that he did not know but they would have to stay there till Saturday night, and a little after five o'clock they agreed, sealed up their verdict and separated. Motion for a new trial overruled. The Court said : "That an irregularity occurred must be conceded, as the more proper course for the officer would have been to decline giving any answer to the inquiry of the juror. But there was no officious intermeddling on the part of the officer, nor any attempt, or previous purpose on his part to hasten the jury to an agreement as to their verdict. His answer to the inquiry of the juror affirmed nothing but his want of knowledge how long the jury would be required to remain together. The defendant may properly object to the motion to set aside this verdict, there being no evidence of any design on the part of the officer to favor either party, or that any such effect was produced by this reply."

In Wiggins v. Downer, 67 How. Pr. 65, it appeared from

the affidavits of three of the jurors that after the jury had deliberated for about fifteen hours they sent word to the Court by the officer in charge that they could not agree; that the constable retired for a moment and upon returning stated that the judge said, "they must agree, or he would keep them until to-morrow noon." One of the three jurors said the substance of the statement of the constable was, that "the judge said he would not discharge them; that they must agree." The Court said: "Assume that the constable did make the alleged statement, and that the jury thought it was a message from the Court, the impropriety of such a proceeding is conceded, but would it be such an irregularity as should avoid the verdict? Would it amount to an illegal constraint? For there must always be some constraint; but abuse should not be permitted." The case of *Erwin v. Hamilton*, 50 How. 32, decided in 1875, was cited, wherein the jury after announcing their inability to agree, were told in effect by the judge that he could not discharge them, but would return after supper and wait a reasonable time for a verdict, and if they failed to agree by that time, the Court would adjourn until the following Monday, at three p. m., then distant nearly seventy hours, when they could bring in a sealed verdict. Held, no ground for a new trial.

In *Pope v. State*, 36 Miss. 121, the officer in charge told the jury while deliberating, in a case of felony, "that unless they decided the case one way or the other they would have nothing more to eat and no water to drink." Some of the jurors understood him to say this by direction of the court, yet it was held no ground for a new trial. But in *Cole v. Swan*, 4 G. Greene 32, the officer informed the jury that unless they agreed on a verdict they would be kept from Saturday till Monday evening without anything to eat, whereby one of the jurors was induced to consent that a verdict might be returned, and a new trial was granted; the court saying *that in case of any conversation between the officer and the jury, the verdict ought to be set aside the moment the fact comes to the knowledge of the court.* The words we have italicized certainly express an extreme view, opposed by the great weight of authority, and tend to weaken the force of the decision as an authority. Moreover, the fact that one of the jurors made oath that he was induced to agree seems to have been considered, when its consideration was unlawful.

After giving the question extended discussion and consideration, we reach the conclusion that this ground of motion for a new trial ought to have been sustained. We deduce

[Kansas City, Memphis and Birmingham R. R. Co. v. Phillips.]

from the authorities, as a sound proposition, that where misconduct on the part of the jurors, or the officers having them in charge, is shown, and it reasonably appears, from the nature of the misconduct and the attendant circumstances, that the verdict may have been unlawfully influenced thereby, a new trial ought to be granted. The remarks actually made by the bailiff, Parker, to some of the jurors, in response to inquiries, were, in themselves, the mere honest and innocent expressions of his opinion of what the judge could or might do in reference to keeping the jury together, but the affidavits show, undeniably, that as the result of the interview, the jurors, or most of them, were made to understand and believe that the bailiff had declared, absolutely, that the judge would keep the jury together for the space of eight days unless they sooner agreed upon a verdict. The influence wrought upon their minds was therefore precisely the same as if the bailiff had, in fact, declared as they understood. It was improper, and, therefore, unlawful, in the first instance, for the jurors to institute such an investigation and interview with the bailiff. An inquiry, how long the court would compel the jury to be kept together, unless they agreed upon a verdict, had a direct bearing upon the discharge of their duties as jurors. No communication with an outsider, whether officer or stranger, having such a bearing, is lawful. To hold such communication is misconduct on the part of the juror who does it, as well as the officer or stranger who engages in or tolerates it; and if the verdict is produced or affected by such misconduct, whether the improper influence which entered into it was justified by anything said or done by the officer or stranger or not, the mischief, effecting injustice to a party litigant, has been accomplished, for the redress of which there is no remedy but to set aside the verdict. The misconduct in this case, consisted in holding any interview at all on the subject. The evil result was that the jury, whether justifiably or not, was made to believe that the judge would keep them together eight days longer. There is no room for doubt that this interview may have unlawfully influenced the verdict that was rendered. The jury had been engaged upon the trial about a week or more; they had been out considering their verdict about eight hours without being able to agree; they had appealed to the bailiff to send for the judge at night to discharge them, on the ground that it was impossible for them to agree; and one or two of the jurors make oath that there appeared no prospect that they would ever agree; yet within two hours after the

[Foley v. Felrath.]

interview they returned a verdict and were discharged. Upon these facts, the court should have granted a new trial, and for the error in refusing it the judgment is reversed and the cause remanded.

Reversed and remanded.