# Prestwood v. Eldridge.

## *Assumpsit.*

1. *Modification of written contract by parol.*—The law is settled in this State that a written contract, not of the class required by statute to be in writing, may be modified or altered by a subsequent parol agreement.

2. *Variance between pleading and proof.*—In an action on a written contract by which defendant agreed to pay plaintiff fifteen cents for floating each log of one class, and ten cents for another class, evidence, which shows that before the matters complained of transpired, the contract was modified so as to entitle plaintiff to fifteen cents each for all logs floated, is a fatal variance, and plaintiff cannot recover.

3. *Breach of contract; burden of proof in mitigation of damages.* In a suit for damages on a contract whereby plaintiff had the exclusive control of the floating of logs through a ditch for a given time at a price named, the logs to be floated as fast as banked at the head of the ditch by the defendant, and as the water would permit, defendant is not relieved from liability by showing that, after plaintiff quit for good cause, there were no logs floated through the ditch during the time complained of, the burden being on the defendant to show that such would have been the case if plaintiff had not quit. A charge that plaintiff could recover only nominal damages if no logs were floated, is erroneous and properly refused.

4. *Competency of proof.*—Where the evidence tends to show that all the logs necessary to keep a mill running were floated through a certain ditch, it is competent to prove the capacity of the mill, as tending to show the number of logs so floated.

5. *Damages for breach of contract; profits; when evidence sufficient.* In an action for the breach of contract by which plaintiff was to float logs at a given price, evidence tending to show the number of logs he was prevented from floating by a breach of

[Prestwood v. Eldridge.]

the contract on the part of the defendant, and of the average cost of floating such logs, furnishes sufficient data from which a jury may render a verdict for damages; and a charge that the evidence does not show the damages sustained, is properly refused.

6. *Newly discovered evidence; new trial.*—A new trial will not be granted on newly discovered evidence, consisting of books of account under the control of the movant, and which, might have been produced on the trial.

APPEAL from Covington Circuit Court.

Tried before Hon. J. W. FOSTER.

The contract sued on and its subsequent modification are shown in the opinion. The plaintiff testified that in December, 1894, upon the failure of the plaintiff to perform his part of the contract, he ceased to float the logs down the ditch; that from December, 1894, to December, 1895, the defendant floated logs down the ditch himself; that in his best judgment there were from six to eight thousand logs carried through the ditch to the defendant's mill, and that the only way the logs could be gotten to the mill was by floating them through said ditch; that the actual cost of running logs through the ditch to the defendant's mill was about three cents per log, and that the defendant owed him the difference between three cents per log and the price agreed to be paid him per log on six or eight thousand logs that were floated from December, 1894, to December, 1895. W. B. Bagley, a witness for the plaintiff, testified that he worked for the defendant during the years 1893, 1894 and 1895 at his mill; that the average capacity of the defendant's mill was six or eight thousand logs per year; that all the logs sawed at the defendant's mill from December, 1894, to December, 1895, were carried to the mill through the ditch involved in this controversy; that between six and eight thousand logs came to the mill and were sawed there during the year from December, 1894, to December, 1895. The defendant objected to the question which called for the answer of the witness stating the average capacity of the mill, upon the ground that it called for illegal, irrelevant, and incompetent evidence, and because said testimony did not tend to show how many logs were run by plaintiff from December, 1894, to December, 1895. The court overruled this objection, allowed the evidence to be intro-

duced, and to this ruling the defendant duly excepted.
Upon the introduction of all the evidence, the defendant
requested the court to give to the jury the following
written charges, and separately excepted to the court's
refusal to give each of them as asked:   (1.)  "If you be-
lieve the evidence, the plaintiff is not entitled to recover
on the written contract sued on in this case."   (2.)  "If
from the evidence you are reasonably satisfied that after
making the written contract sued on the plaintiff and
the defendant mutually agreed that for all logs run by
the plaintiff for defendant above the first or big waste-
way to the mill of defendant, the defendant was to pay
the plaintiff eighteen cents per log, and that for all logs
which might thereafter be put in at the first or big
wasteway and run by plaintiff to defendant's mill, the
defendant was to pay the plaintiff fifteen cents per log,
then the plaintiff would not be entitled to recover on
the written contract sued."   (3.)  "If you believe the
evidence, under the written contract, the plaintiff was
to receive ten cents for lumber logs and fifteen cents for
all other logs run from the first wasteway to the defend-
ant's mill, under the subsequent contract the plaintiff
agreed that for all logs run from the first or big waste-
way the defendant was to pay plaintiff fifteen cents per
log, under this evidence and the other evidence the plain-
tiff is not entitled to recover on the written contract."
(5.)  "The court charges the jury that under the evi-
dence in this case the plaintiff is not entitled to recover
under the first count of the complaint."   (6.)  "The
court charges the jury that there is no evidence in this
case from which they can ascertain any damages plain-
tiff claims to have sustained by the alleged breach of de-
fendant."   (7.)  "If the jury believe from the evidence
that the contract was made whereby plaintiff was to re-
ceive 18 cents for logs run from above the first waste-
way on the creek to the mill, and that no logs were run
by him from December 22, 1894, to December 22, 1895,
the plaintiff can recover no more than nominal damages
under the first count of the complaint."   There were
verdict and judgment for the plaintiff.   Thereupon the
defendant moved the court to grant a new trial, upon
the ground, among others, that there was newly discov-
ered evidence.   In support of this motion, the defend-
ant offered in evidence several affidavits.   One of these

affidavits was made by W. B. Bagley, who stated therein that when he testified on the trial of the case that the average capacity of the mill for the logs that were run through the ditch was six or eight thousand logs per year, he had not examined the tally kept for that year, and, therefore, could not testify with accuracy; that since that time, he did examine the tally kept of said logs, as contained in the books of the defendant, and found that he was mistaken in the estimate, and that from a careful examination he found that the true number of logs run by defendant from December, 1894, to December, 1895, through said ditch was 2,065. The court overruled the motion and the defendant duly excepted. The defendant appeals, and assigns as error the several rulings of the court to which exceptions were reserved.

D. M. POWELL, and M. E. MILLIGAN, for appellant, cited, Badders & Britt v. Davis, 88 Ala. 367; Cornish v. Suydam, 99 Ala. 620; Hembree v. Glover, 93 Ala. 625; Bish on Cont. 764, 766, 768; 2 Wharton on Cont. 705.

P. N. HICKMAN, contra.

COLEMAN, J.—Suit was brought by the appellee to recover damages for the breach of a written contract. The defendant was engaged in the saw mill business, and contracted with the plaintiff to cut a ditch from the mill pond of defendant to a point where "Soldiers Head Branch" emptied into the mill pond creek, and designated as the "Big Wasteway," the ditch to be used for rafting of logs to the mill. The consideration for cutting the ditch, was the payment to Eldridge, the plaintiff, of twelve hundred dollars, and "the said Eldridge is to have full control of the running of any and all logs in said ditch at and for the sum of fifteen cents, for each log delivered, and to deliver the logs as fast as the water will permit and the logs are banked. It is agreed that all logs known as lumber logs are to be run at and for the price of ten cents, and the said Eldridge is to have control of the running of the logs at the price above agreed upon for the term of three years from the completion of the ditch, etc." The ditch was completed, paid for, and both parties, it seems, complied with the terms of the contract with mutual satisfaction for the

first year. After that time, the ditch was extended a further distance to a point designated as Fletcher Wasteway. The evidence shows that the parties mutually agreed by parol, that plaintiff was to receive eighteen cents a log for each log run from Fletcher Wasteway and fifteen cents a log for all logs run from the "Big Wasteway." The law is settled in this State that a written contract may be modified or altered by a parol agreement, unless the contract is of that class which by statute is required to be in writing.—*Badder & Britt v. Davis,* 88 Ala. 367. The plaintiff testifies positively that it was understood and agreed that the written contract was preserved and continued in force, and the defendant testifies that the written contract was rescinded upon the making of the new contract. The evidence shows that the plaintiff was discharged before the expiration of the three years, or at least ceased to work—whether for sufficient cause or not, is not raised by the record. The complaint declares upon the written contract, and the defense is, that the written contract was rescinded by the making of the subsequent contract after the ditch was extended to "Fletcher Wasteway," and that the original contract furnishes no cause of action. We have stated all the evidence that is material to the question. The court refused certain charges requested by the defendant, and which refusal is assigned as error.

The first five charges, though in different forms, involve but one question, and that is, whether under any phase of the evidence, the plaintiff was entitled to recover. We are of opinion that they were properly refused. It is true that in one part of the written contract, it is stipulated that for lumber logs only ten cents was to be paid per log, but the same contract provides in another place that plaintiff was to be paid fifteen cents for all logs from the "Big Wasteway." The verbal contract provides that for all logs from the "Big Wasteway" plaintiff should receive fifteen cents per log, and from Fletcher Wasteway eighteen cents. The parties might well agree that an additional three cents per log should be paid for running logs from Fletcher's Wasteway to which place the ditch had been extended, and have continued in force the stipulation to pay fifteen cents for logs run from where the first ditch termi-

[Prestwood v. Eldridge.]

nated.   It is true that the defendant testified that the
first contract was rescinded, and yet it is apparent from
his own testimony, that he regarded some of its provis-
ions binding and in force.   And there is the evidence of
the plaintiff, who testified unqualifiedly that it was ex-
pressly agreed, that it was to remain in force.   The
evidence, considered as a whole, did not authorize the
conclusion of law asserted in the charges requested.

The sixth charge was not warranted by the evidence.
There was sufficient data from which the jury could
reach a verdict.

The seventh charge seems to be abstract, but if not
abstract, asserted an erroneous proposition of law.   To
have relieved the defendant from liability upon the
grounds, that no logs were run through the ditch, it was ·
incumbent upon him to show that had plaintiff been
continued in his employment (conceding that he was
justified in quitting), the same result would have fol-
lowed.

The court did not err in admitting the testimony of
the witness Bagley.   Considering his testimony as a
whole and in connection with the testimony of other
witnesses, it tends to show the number of logs delivered
at the mill during the year.   The evidence shows that
all logs supplied to the mill came through the ditch,
that it ran regularly during the year, the capacity of
the mill tended to show the number of logs delivered.

Upon the motion for a new trial the facts show that
the books, tally of logs kept, were under the control of
the defendant.   One of the vital questions at issue—·
as shown by the complaint—was the number of logs de-
livered.   It was the duty of the defendant to have had
his books and the tally in court during the trial.   The
defendant's neglect or failure to have them present
shows a want of diligence and cannot serve as grounds
for a new trial.—*Kansas City v. Phillips,* 98 Ala. 159.
We find no error in the record.

Affirmed.


*On the Application for Rehearing.*


Per CURIAM.

On consideration of the application for rehearing,
the court has reached the conclusion that there is a fatal

variance between the contract sued on and the contract proved. The complaint avers a contract stipulating for payment by Prestwood to Eldridge of fifteen cents for each timber log and ten cents for each lumber log floated by the latter from the "Big Wasteway" to the former's mill. That was the original written contract, but it was modified by mutual consent of the parties long before the matters complained of transpired so as to stipulate for the payment of fifteen cents per log for all logs so floated by plaintiff; and this is not only shown by the undisputed evidence, but was admitted on all hands at the trial. On this state of case charges 1, 3 and 5, refused to the defendant, should have been given.

The judgment of affirmance must therefore be set aside; and the judgment of the lower court will be reversed and the cause remanded.