OBEAR, executor, *et al., vs.* GRAY.

1. Where a usee for whom a trust had been created filed a bill to have the property turned over to him, and the turning point of the case was whether the complainant was *sui juris,* if counsel agreed to submit that question alone to the jury, stripped from questions of waste or like questions, a decision thereon was final, and could be brought to this court.

2. Where the chancellor in an equity cause substantially submitted the issues necessary to be passed upon, if counsel desired a fuller submission or a submission in a different form, they should have requested it.

3. Where on the direct examination a witness states a fact which, on cross-examination, it appears that he stated on hearsay, the testimony will be excluded on motion.

4. For a bailiff in charge of a jury to tell them while considering the case and apparently finding it difficult to agree, that in his opinion the judge would keep them out a week or compel them to agree, was such practice as necessitates a new trial.

5. The jury being detained over Sunday in the consideration of a case it was error to allow them to go to a park, which was a place of public resort, and to separate from each other for some time ; and a new trial will result unless it be clearly shown that nothing occurred with them or in their presence or hearing which could affect the case.

(*a.*) In this case the purgation is not complete.

6. If it appear that a verdict was the result of lot or chance, it will be set aside.

(*a.*) While a juror may not impeach his finding either by direct testimony, or by admissions, yet the general conduct of the jurors and the circumstances attending the finding in this case, indicated that it was not arrived at in a legal way.

Practice in Supreme Court.   Practice in Superior Court. Evidence.   Jurors.   Verdict.   Before Judge SIMMONS. Bibb Superior Court.   April Term, 1881.

To the report contained in the decision, it is only necessary to add, in connection with the third division thereof, that the question being whether Gray was capable of managing property or not, Hickman testified to his conduct-

ing business and making money; but on cross-examination it appeared that he received his information from statements of Gray himself, and thereupon the testimony was excluded.

LANIER & ANDERSON; HALL & SON, for plaintiffs in error.

J. RUTHERFORD; WHITTLE & WHITTLE; J. C. RUTHERFORD, for defendant.

CRAWFORD, Justice.

William Gray by his last will and testament gave George S. Obear one-fourth of all his personal and real estate in trust for his son, Edwin T. Gray, whom he believed to be wholly incompetent to take care of it. This property was to be managed and controlled by the trustee for the benefit of the *cestui que trust*, whose expenses were to be limited to the income from the property, and who was not permitted to bind his estate by any contract not assented to in writing by the trustee. The will was duly probated, and is of full force and effect in all its parts as a will.

The *cestui que trust* filed a bill against Obear, the executor and trustee, calling upon him to account for and pay over to him the trust funds so set apart for his benefit by his father's will. Upon the trial of the case, the court below held that he was not entitled to recover the property, because it was an executory trust which the father had the legal right to create, that he might protect the property bequeathed to his son. Upon a review of that case by this court, it was held to be an executed trust, and that such an estate could not be created in property for the benefit of a male who was *sui juris*.

This decision of the supreme court was met by answer of the defendant in the court below, that the complainant was *non compos mentis* at the time of the execution of the will, and still remained in that condition.

Upon the second trial, the jury found for the defendant, but for errors committed on the trial, the verdict was set aside, and a new trial ordered. When the case came on for trial the last time, it was agreed by the parties that the question of whether the complainant was *sui juris* or not should be stripped of the question of waste and mismanagement, which was also charged against the trustee, and that that issue be tried by itself. It was so tried, and the verdict was that the *cestui que trust* was not *sui juris* when the will was executed, but that he was not then, at the time of the trial, so unsound or weak in mind, or so imbecile, as that he could not manage property in the ordinary affairs of life.

The defendant moved to set this verdict aside, because of errors committed on the trial, which motion was refused by the court, and that refusal brings the case up again.

1. The first question made before this court was a motion to dismiss, because the case had been prematurely brought.

It was insisted that the verdict and judgment in no view could have been a final termination of the suit. Enough has been stated to make clear the nature of this point. The case had been brought by the complainant in his own right, as one having a legal standing before the court. The defendant put in issue that very question, and had it been decided in his favor, there would have been no legal party complainant before the court. As to him, as a party *sui juris*, certainly the case would have been at an end; but as to the court's retaining it, that some one else might be authorized to represent the party who was not himself *sui juris*, is a matter not considered by the court below, and is therefore not before us. We deal with the case as it is made here. The motion to dismiss is therefore overruled.

2. There were several grounds set forth in the motion for a new trial which we now proceed to consider.

One of the errors alleged to have been committed by

the court was in submitting the second issue to the jury, which was, " Whether Edwin T. Gray is now so unsound, or so weak in his mind, or so imbecile, that he cannot manage his property as ordinary men manage property in the ordinary affairs of life," instead of, " Has Edwin T. Gray, since the execution of his father's will, become so sound of mind as to be now capable of managing property as ordinary men manage their property?" Whilst we think the latter would have been a more appropriate form in which to have put the issue, still, as it was not presented to the judge in that way and refused by him, it was no error that he did not so submit it. This court has held, where issues are to be passed upon, that counsel, if not satisfied with such as are proposed, or if they desire that there should be others, have the right to suggest them, and have them submitted to the jury or refused; if, however, this be not done, then it is too late for them to complain.

Our judgment is, that in view of this effort on the part of the father to secure this property to the use and enjoyment of his son through life, that before it is taken out of the hands of the trustee and placed in the control of the *cestui que trust*, against whose management the father was endeavoring to guard it, the reasons prompting him should be well ascertained to have passed away.

This trust should not be destroyed, and the will *quoad hoc* set aside, upon any uncertain or doubtful grounds; hence, the issue should be well defined as to his soundness of mind and capacity to manage his property, not temporarily but permanently.

3. The objection to the testimony of Sidney Hickman as set out in the fourth ground of the motion for a new trial, should have been ruled out after it was known that his information was obtained from the complainant.

4. But the main errors upon which we think that the case should be sent back, are those arising from the conduct of the bailiff and the jurors, whilst they had the case

under consideration.   It appears from the record that the bailiff, who under the law, had the jury in charge, after they had been out for some time considering what verdict they should render, being very restive and impatient, and while they were standing about five to seven, as appears from the affidavits, told them that in his opinion the judge would keep them out a week or compel them to agree.

According to the recorded judgment of this court in the case of *Gholston vs. Gholston,* which was a libel for divorce, and reported in 31 *Ga.,* 625, it was held that a jury was improperly influenced by the sheriff's telling them that unless they speedily agreed upon a verdict, the judge would carry them to Elbert county, and that he was making preparations for that purpose.

The deliberations of a jury are not to be interfered with whilst they are considering the law and the testimony which alone must control their verdict.   They are by no means to be influenced by the fear of a week's confinement, to alarm them into an agreement.   Such a suggestion, even by the very officer in whose custody they are placed, would be highly improper, and especially so in view of the fact that they are thus placed to prevent every outside influence by word, sign, or speech, from affecting unlawfully their finding.

5. But other and quite as serious complaints are made in reference to allowing the jury to be carried to the public park, a place of great resort, especially on Sundays, and allowing them whilst there to pass about, and to separate for some considerable time.   Every jury is to be carried to the jury room, or some other private and convenient place, where they are not to be spoken to by the officer having them in charge or others, unless by leave of the court.   To take them, therefore, to a park, which is said to be a place of great public resort, especially on the Sabbath day, where they are almost sure to hear something said about the case, whether they would or not, is most clearly a violation of the spirit and purpose of the

Obear, executor, *et al. vs.* Gray.

law in withdrawing them from the body of their fellow-citizens until they have agreed upon their verdict. We think that this was a good ground upon which to set aside the verdict, unless it was clearly shown that no such thing occurred while they were in the presence and hearing of other visitors. It is true that the affidavits offered show every thing necessary to purge them, except that it does not appear but that they heard bystanders make remarks about the case. To make the purgation complete, this should affirmatively appear. 37 *Ga.*, 332; 38 *Ib.*, 216; 56 *Ib.*, 653.

6. Lastly, it is insisted that the verdict was the result of lot or chance. This ordinarily cannot be positively shown; it can only be reached by such facts as may be gathered in a legal way from what others than the jurors could testify to. The bailiff in charge of the jury swears that on Saturday night whilst there was considerable disorder in the jury room, he heard fragments of talk about numbers, whoever drew the highest number should get it; referring, as he supposed, to the verdict. T. W. Ellis swears that one of the jurors said to him that during nearly the whole time the jury were out, they were almost equally divided; there seemed no chance for them to agree, and this difference of opinion existed up to the time of their discharge and afterwards. And although he would not disclose how it was done, yet he said that the verdict was the result of chance, and not agreement among the jurors. E. W. Pridgen swears that he asked Gates, one of the jurors, how they reached a verdict, and he said that they were about equally divided until the last, and that some of the jurors were so worried and completely broken down, that they fixed up a verdict. Whilst these affidavits of the sayings of the jurors are not admissible to impeach their verdict, still that of the bailiff was, and with others, were the occasion of counter-affidavits by the jurors themselves in vindication thereof in other respects. Yet it is a most remarkable fact that no one whose affidavit is

v 68—14

furnished either notices, replies to, or denies the truth of this charge as contained in the grounds of the motion for a new trial. We, therefore, if not driven to the conclusion that it is true, must say that there were strong and sufficient reasons under the facts to call upon them to exculpate their verdict from the taint of suspicion resting upon it.

Our judgment is, after a review of this whole case, that justice demands another trial, and a verdict returned free from the numerous doubts which environ this on all sides.

Judgment reversed.