United States Gypsum Company, a Delaware Corporation, v. Columbia· Casualty Company.

169 So. 532.

Opinion Filed June 10, 1936.

*John Tilden* and *W. F. Anderson,* for Plaintiff in Error;
*Maguire & Voorhis* and *M. W. Wells,* for Defendant in Error.

DAVIS, J.—On January 14, 1930, the plaintiff in error, United States Gypsum Company, filed this suit against Columbia Casualty Company, the defendant in error, as surety on a construction bond. The bond was the standard form approved by the American Institute of Architects and was executed to the Right Reverend Patrick Barry, Bishop of St. Augustine Diocese, Roman Catholic Church, as obligee. The construction work to which the bond pertained was a school building for St. James Roman Catholic Parish at Orlando, Florida. Under the facts alleged in plaintiff's declaration, a cause of action against the surety company was made out. See: Johnson Electric Co. v. Columbia Casualty Co., 101 Fla. 186, 133 Sou. Rep. 850, 77 A. L. R. 1; Barry v. Columbia Casualty Co., 101 Fla. 168, 133 Sou. Rep. 852. So a final judgment in the surety company's favor rendered on demurrer sustained to plaintiff's declaration in this case was in due course of appellate procedure, reversed. See: United States Gypsum Co. v. Columbia Casualty Co., 111 Fla. 526, 149 Sou. Rep. 569.

When this Court's mandate and opinion of reversal were lodged in the Circuit Court, the case was returned to the rolls for further pleading to the plaintiff's declaration, that is to say, to the declaration of plaintiff that this Court had held to be good.

Thereupon the defendant below interposed a special defense in the form of pleas, the substance of which is as follows: That on November 21, 1929, suit had been theretofore brought in the Circuit Court on the same bond now set up in the declaration held good by the Supreme Court;

that in due course of procedure defendant had demurred to plaintiff's declaration, which demurrer had been sustained by the Circuit Court; that pursuant to said demurrer sustained to plaintiff's declaration that the Circuit Court had, on April 8, 1930, entered final judgment thereon in defendant's behalf and against plaintiff discharging defendant from any and all further liability on the bond sued on; that thereafter the trial court had refused to permit an amended declaration to be filed and that subsequent thereto a writ of error prosecuted by plaintiff to the adverse judgment rendered on the demurrer had been dismissed because sued out too late (United States Gypsum Co. v. Columbia Casualty Co., 100 Fla. 1802, 132 Sou. Rep. 217); that in consequence of said former judgment of the Circuit Court rendered on the same bond now sued on in this case, the Circuit Court had finally and irrevocably adjudged that there was, as a matter of law, no cause of action accruing to plaintiff on said bond, and that the plaintiff and defendant being the same parties in both actions, and the bond and cause of action predicated thereon being the same in this case as in the former case, that the Circuit Court's judgment of April 8, 1930, holding that the declaration stated no cause of action was *res adjudicata* of the present controversy, notwithstanding the opinion and judgment of the Supreme Court rendered in the present case on July 30, 1930, holding contrary to the decision and final judgment of the Circuit Court as to the alleged insufficiency of plaintiff's present declaration to state a cause of action in the suit now before this Court on writ of error.

Demurrers to the pleas of *res adjudicata* were overruled, motions to strike same were denied and final judgment thereon in favor of the surety company was rendered on a stipulation of facts that in substance established the truth of the allegations set up in the pleas of *res adjudicata*. The

case now before this Court on the present appeal is on writ of error to the last mentioned finding and judgment.

It will thus be observed that the question to be decided in the present case may be posed as follows:

. Where there is a single bond entered into between an owner as obligee, a construction company as principal, and a bonding company as surety, wherein the owner is to be indemnified from all costs and damages for the principal's failure to pay sub-contractors under him directly, and where a sub-contractor having two separate contracts with the principal covered by said bond, thereupon brings two separate suits at law against the surety company bond on his several contracts, whereupon the Court denies a motion to consolidate the two suits, with the ultimate result that each suit is separately decided against the sub-contractor on demurrers to the several declarations, the judgment in one of the cases being reversed, and a writ of error to the final judgment in the other case being sued out but dismissed because taken out too late, can the unreversed and unreversible judgment of the Circuit Court in one case wherein the writ of error was dismissed for lack of jurisdiction in the appellate court to reverse the erroneous judgment in that case, be pleaded in bar in the second case as *res adjudicata* sufficient in law to nullify and defeat the decision and mandate of the Supreme Court in such second case upholding the declaration in the latter case as sufficient to state a cause of action notwithstanding the decision and judgment of the Circuit Court to the contrary, where the judgment and mandate of the Supreme Court has affirmatively set aside an earlier judgment of the Circuit Court holding the declaration to be bad, and has directed the Circuit Court thereupon to have such further proceedings in that cause pursuant to the Supreme Court's judgment and mandate as according to right, justice, *the judgment of the*

*Supreme Court,* and the laws of the State of Florida ought to be had in the premises?

The doctrine of *res judicata* is an obvious rule of expediency and justice. As such it is a part of the legal systems of all civilized nations. The legal precept comprehended within the phrase *"res judicata"* may be briefly defined as the doctrine that an existing final judgment or decree rendered upon the merits, and without fraud or collusion, by a court of competent jurisdiction, upon a matter within its jurisdiction, is conclusive of the rights of the parties and of their privies, in all other actions or suits, in the same, or in any other judicial tribunal of concurrent jurisdiction, on the points and matters in issue in the first suit. *Res judicata* means that the judgment of a court of competent jurisdiction directly rendered upon a particular issue, as a plea, a bar, or as evidence, is conclusive, between the same parties, upon the same matter, when directly again brought in question in another controversy between the same litigants or their privies.

The doctrine of *res judicata* (*nemo debet bis vexari si constet curiae quod sit pro una et eodem causa*) not only puts an end to strife but produces certainty as to individual rights and gives a dignity and respect to judicial proceedings that would otherwise be interminable so long as the litigants were possessed of means to prolong their controversies.

But the application of the doctrine *res judicata* is of close affinity with the equally salutary doctrines of collateral attack, inconsistent positions in legal proceedings, law of the case, and election of remedies. Each of the legal principles last mentioned may give rise to estoppels as effectually binding upon the involved litigant as the estoppel of *res judicata*. Thus the doctrine of the law of the case is in its essence nothing more than a special and limited ap-

plication of the doctrine of *res judicata* or former adjudication. It is ·of special significance as applied to decisions of questions of law as distinguished from decisions on questions of fact, previously rendered in the same case.

Briefly elaborated, the doctrine "law of the case" means that whatever is once irrevocably established as the controlling legal rule of decision between the same parties in the same case continues to be the "law of the case," whether correct on general principles or not, so long as the facts on which such decision was predicated continue to be the facts of the case before the court. Gee v. Williamson, 1 Port. (Ala.) 313, 27 Am. Dec. 628, and note; Ross v. Bank of Burlington, 1 Aikens (Vt.) 43; 15 Am. Dec. 664. Thus, where interlocutory appeals are permitted an appeal from an interlocutory order when decided by the appellate court may effectually so become the law of the case as to future steps in it as to altogether preclude material changes in the judicial hypothesis upon which the appellate decision was rendered. Palm Beach Estates v. Croker, 106 Fla. 617, 143 Sou. Rep. 792 (first two headnotes).

So, reduced to its ultimate analysis, the case now before this Court presents a case of conflicting judicial estoppels. That is to say, it is a case wherein plaintiff below relying upon the "law of the case" as decided by this Court in its decision and mandate of July 30, 1933, holding its declaration to be good (United States Gypsum Co. v. Columbia Casualty Co., 111 Fla. 526, 149 Sou. Rep. 569, *supra*), contends that defendant's plea of *res judicata* predicated upon a Circuit Court's unreversed contrary judgment rendered in a companion case decided between the same parties, based on exactly the same liability, pleaded in an identical form of declaration, must fall before the superior legal force and effect of the Supreme Court's ·judgment that has already been duly, and irrevocably, established, as the "law of the

case" insofar as any Circuit Court adjudication predicated upon an alleged insufficiency of plaintiff's declaration may be concerned.

Our conclusion is that plaintiff's position, thus stated, is sound. Here the "law of the case" as established on the prior appeal prosecuted in this same suit, is to the effect that plaintiff's declaration is good and entitled plaintiff to recover unless something in bar or preclusion thereof shall be pleaded and proved by defendant as a defense. The only defense asserted thus far is that in a companion case between the same parties, based on the same bond, relying upon the same cause of action, and particularized in identical pleadings, an unreversed judgment of the Circuit Court has been rendered holding that plaintiff in the present case has stated no cause of action and is therefore not entitled to recover anything at all on the particular bond sued upon.

The fallacy of defendant's premise in setting up the Circuit Court judgment as a bar *res judicata* to the present suit is at once made apparent when we consider, as we must, that the doctrine "law of the case" is simply a special application of the broader doctrine known as *res judicata.*

Here, the fundamental *res judicata* (law of the case) consists of a prior judgment of the Supreme Court rendered in this same case. By such prior judgment of the Supreme Court the "law of the case" has been irrevocably established as entitling the plaintiff to proceed upon its present declaration as a basis of recovery, notwithstanding any contrary opinion or judgment of the Circuit Court that may be set up in opposition to the mandate of the appellate court.

The rule is well settled that when a question of law has been decided by an appellate court, it is considered final and cannot thereafter be reviewed upon a subsequent appeal in the same case. 1 Encyclopedic Digest Florida reports,

paragraph 190, and cases cited. Thus the judgment and mandate of the appellate court possesses every attribute of *res judicata* of the question of law passed upon in the appellate proceeding. And none of the parties to the appellate proceeding can aver or plead against it later in subsequent steps in that same case, because the opinion and judgment of the appellate court became the "law of that case" and superogatory and final as to what has been decided upon the appeal.

Therefore, assuming that the judgment of the Circuit Court pleaded in the present case was and is *res judicata* of the lack of merit in plaintiff's pleaded claim, the judgment of the Supreme Court rendered after issue of law joined between the same parties on the prior appeal in this same case, is likewise *res judicata* of the sufficiency of that same claim. This is so, because the opinion and judgment of the appellate court has become the adjudicated "law of the case" in the present suit.

Therefore, as between conflicting adjudications based upon an identical point of law involved, the conclusion is obvious that the legal force and effect as an estoppel of the Supreme Court's opinion and decision establishing the "law of the case" in the particular suit must be given superior force and effect to the alleged estoppel of a contrary judgment of a Circuit Court set up in opposition to the effectiveness of the appellate court's judgment and mandate pursuant to which the instant case was returned to the Circuit Court's rolls for determination after a previous final judgment in the case was reversed, with directions to do right and justice between the parties to the appellate proceedings.

The law of the case as decided by an appellate court is one kind of estoppel. Former adjudication in another separate suit by a judgment therein unreversed is another kind

of estoppel. But both kinds of estoppel rest entirely upon the principles of *res judicata.* If, therefore, both kinds of estoppel have arisen with reference to the same controversy and between the same parties or their privies, the estoppel grounded upon the decision of the highest court must prevail. Hence the estoppel of "law of the case" is of greater weight than an estoppel by former adjudication in a separate suit decided in the lower court and the "law of the case" must take precedence if the two estoppels cannot stand together in the same litigation because irreconcilable as against each other.

This is especially true in a case like the present one where the parties have deliberately made and joined an issue in law in an appellate court, and have thereupon voluntarily become bound by the appellate decision deciding the "law of the case" without calling to the appellate court's attention, while the appealed case was still pending before it, the circumstance of an alleged contrary unreversed prior adjudication between the parties of the precise point in controversy that would be *res judicata* in the case on appeal, if pleaded *absent* an appellate decision establishing the "law of the case" as being in opposition to the contentions requested to be determined on the appeal.

The Circuit Court erred in finding in favor of defendant below on the pleas of *res judicata,* so the judgment is reversed with directions to enter a finding to the contrary on such pleas and thereupon permit such pleadings and proceedings in the cause as shall be consistent with the law of the case as established upon the prior writ of error.

Reversed and remanded with directions.

WHITFIELD, C. J., and TERRELL and BUFORD, J. J., concur.

ELLIS, P. J., and BROWN, J., dissent.

ELLIS, P. J. (dissenting).—The United States Gypsum Company had two contracts with Louis Fleisher Construc-

tion Company to furnish materials to the Construction Company which had entered into a contract with Reverend Patrick Barry, Bishop of St. Augustine, to erect a school building for the St. James Roman Catholic Parish at Orlando, Florida.

The Fleisher Construction Company executed a bond with the Columbia Casualty Company as surety in favor of Bishop Barry to indemnify the latter against the failure of the Fleisher Construction Company to faithfully perform the contract on its part and satisfy all claims and demands incurred for the same.

The Fleisher Company failed to pay the Gypsum Company for the materials which it furnished under its contracts with the Fleisher Company. Thereupon the Gypsum Company brought two separate actions against the Columbia Casualty Company upon the bond to recover the amount due under each contract respectively.

In the first case the trial court sustained a demurrer to the declaration and entered a final judgment for the Columbia Casualty Company that it go hence without day and that the Gypsum Company take nothing by its declaration. That judgment stands unreversed. A writ of error was attempted to be taken to it, but the attempt was not made within the required statutory time to give the Supreme Court jurisdiction, so the writ was dismissed. United States Gypsum Co. v. Columbia Casualty Co., 100 Fla. 1802, 132 South. Rep. 217; Sec. 4619 C. G. L. 1927; City of Orlando v. Hewitt, 92 Fla. 933, 110 South. Rep. 874; Simmons v. Hanne, 50 Fla. 267, 39 South. Rep. 77. Therefore, it may be said that no effective or valid attempt was made to attack the judgment and it cannot now be impaired.

The demurrer attacked the declaration upon the ground that it stated no cause of action; that it showed no right in the plaintiff to recover against the defendant on account

of any indebtedness due by Louis Fleisher Construction Company to the plaintiff; that a contract under seal cannot be sued upon by any person unless he is a party to the deed, and other grounds. The demurrer was sustained by order of the court dated March 14, 1930, and the defendant was allowed until April Rule Day, 1930, within which to amend its declaration. On April 8, 1930, the court entered its final judgment that the plaintiff take nothing by its declaration and that the defendant go hence without day.

The action was begun November 21, 1929, and appeared as case number 9010 on the docket of the Circuit Court.

The second action was begun on January 14, 1930, and appears as case number 9066 on the docket of the Circuit Court.

In the first action the plaintiff claimed that the Fleisher Company owed it for certain partition and furring work and materials. In the second action the plaintiff claimed that the Fleisher Company owed it for certain roofing work and materials. The amount due on each account as alleged in the respective declarations was due before the bringing of the first action. In fact, each declaration claims interest upon the amount alleged to be due on each account from January, 1929.

In February, 1930, the court denied the defendant's motion to consolidate the two actions. That was error because the consolidation of the two actions at law "was practicable and in accordance with the principles of law." Section 4224 C. G. L. 1927. Baker v. Rowe, 102 Fla. 622, 136 South. Rep. 681.

The Construction Company and the Surety Company were bound on the same bond, one as obligor, the other as surety. The breach of the bond in each case was alleged to consist in the failure of the obligor and surety to pay the amount alleged to be due to the plaintiff by the Fleisher Company

on account of materials and work furnished by the plaintiff to the Fleisher Construction Company, and, as shown, the amount alleged to be due on both accounts was due and drawing interest when the first action was begun.

The cause of action, if any existed in favor of the plaintiff against the defendant Surety Company, arose because of the failure of the Fleisher Company to pay to the United States Gypsum Company the amount alleged to be due to it for materials and work supplied which the covenant in the bond obligated the Surety Company to pay. It failed to pay, so it is alleged, therefore the covenant was breached and the cause of action accrued.

The fact that the Gypsum Company had two contracts with the Fleisher Company, one requiring the furnishing of "partitions and furring materials" and the other "roofing materials" did not of itself create two separate and distinct causes of action against the Surety Company, when the amounts due under both contracts became payable before the beginning of the first action. They constituted one debt, the failure to pay which constituted one breach of the covenant in the bond, not two breaches of the covenant. There was only one relation of debtor and creditor between the Gypsum Company and the Fleisher Company. The Surety Company's liability on the bond rested upon the Fleisher Company's failure to discharge that one obligation to pay the debt arising for the furnishing of material and work on the building constructed.

There was only one debt, one demand, arising under the two contracts. That debt could have been established against the Fleisher Company when the first action was brought under a count for work done and materials furnished. The Surety Company's liability, if any, accrued because the Fleisher Company failed to pay that debt.

There was a demurrer to the declaration in the second

case interposed in March, 1930. There was also a plea in abatement setting up the pendency in the court of the first action. On May 31, 1930, the court by order sustained the demurrer, and the plaintiff electing not to amend, final judgment for the defendant was entered in that case. A writ of error was taken to that judgment and on July 20, 1933, the Supreme Court reversed the judgment. See United States Gypsum Co. v. Columbia Casualty Co., 111 Fla. 526, 149 South. Rep. 569.

That case merely decided that the second declaration stated a cause of action; that the Gypsum Company could maintain an action against the Casualty Company on the bond. No question as to the effect of the first judgment upon that cause of action was presented or considered.

Following the mandate, the court vacated its judgment in the second case and granted to the defendant an opportunity to plead to the declaration. On March 7, 1935, the defendant pleaded the first judgment as an estoppel to the maintenance of the second action. On the same day motion to strike the plea and a demurrer to it were filed. It appears from the record that two days before the filing of the plea and the motion to strike and the demurrer the court in an order in which it recited a motion to strike a plea in abatement filed in March, 1930, and a motion to strike and compulsory amendment filed in July, 1934, to additional pleas filed in July, 1934, overruled the demurrer and denied the motion.

The record then discloses that plaintiff's counsel filed a petition for a "re-hearing on and modification of the order heretofore entered in this cause denying plaintiff's motion to strike and overruling demurrer to the pleas of *res adjudicata* filed by the defendant."

On June 11, 1935, the court denied the petition. The record does not disclose that any order was made by the

court either upon the motion to strike the plea filed March 7, 1935, or upon the demurrer to that plea.

On June 15, 1935, a stipulation was entered into and filed by counsel that the "cause may be tried before the Honorable Frank A. Smith, Judge." The stipulation recites the "facts on which such trial will be had." The stipulation makes no reference whatever to the plea filed on March 7, 1935, nor to any issue of fact or law thereon.

What the court was to try, therefore, is a matter of guess work. The plea of March 7, 1935, set up certain facts which constituted an estoppel, as averred in the plea, to the maintenance of the second action. No issue was joined on the plea. There was nothing to try. There is nothing either in the record or the stipulation to show that the motion to strike or demurrer were ruled upon by the court.

The judgment of the court was that the plaintiff take nothing by its "suit" and that the defendant go hence without day. The judgment order recited that the cause came on for trial "before the court upon issues joined between the parties, a jury having been waived by written stipulation and by stipulation before the Court, and the respective parties having submitted their evidence and having concluded their arguments, the court finding that the allegations of the additional pleas are true, does find for the defendant."

Unless a trial in such circumstances is recognized as a judicial comedy the judgment of the court could not have been different in the nature and law of the case. If, as the order recited, issue was joined upon the plea and the cause was ready for the jury, the court could not have found otherwise, in view of the plea and written stipulation, than that the averments of the plea were true.

If the plea was bad it should not have been sustained on demurrer. See Marx v. Culpepper, 40 Fla. 322, 24 South.

Rep. 59; Little v. Bradley, 43 Fla. 402, 31 South. Rep. 342; Hunter v. Wilson, 21 Fla. 250. But the plaintiff by joining issue upon the plea and submitting the trial of the issue thereon to the judge in place of a jury waived the demurrer and motion to strike and elected to go to trial upon the averments of fact made in the plea.

The order recites that issue was joined. In that case a similiter was immaterial. Globe Theater v. Watt, 62 Fla. 196, 57 South. Rep. 201.

If the plea tendered an immaterial issue and was accepted by the plaintiff the parties had a right to go to trial on it. Nelson v. Hall, 73 Fla. 810, 74 South. Rep. 877; Hood v. French, 37 Fla. 117, 19 South. Rep. 165; Cotton States B. & S. Co. v. Fla. Ry. Co., 69 Fla. 52, 67 South. Rep. 568; People's Nat. Bank v. Magruder, 77 Fla. 235, 81 South. Rep. 440.

Judge Call, of the Fourth Circuit, speaking for the court in Hood v. French, *supra,* said: "The parties to the cause and their counsel must be held to some responsibility in presenting the issues to be tried; and there is no more effective method than by holding them to a strict accountability," text 132. There is no more salutary rule, if courts of justice are not to be converted into informal, arbitrary boards, where so-called substantial justice is to be substituted for rules of law and procedure by which only accurate administration of justice may be attained.

There was no motion for a judgment *non obstante veredicto* as in the Magruder case, *supra,* was suggested to be the proper remedy if the plaintiff deemed the averments in the plea to have been immaterial.

It is no concern of the appellate court that the plaintiff might have by its counsel insisted upon testing the materiality of the averments in the plea which it apparently intended to do by its demurrer and motion to strike, but

which course it abandoned by going to trial on the issues of fact made by the plea. If counsel were not satisfied with such issues or if they desired that there should be others, they should have suggested them and had them submitted to the judge. Not having done so they cannot complain. Obear v. Gray, 68 Ga. 182; 11 Ency. Pl. and Prac. 668.

So for the purpose of the trial the issue presented by the plea must be deemed material. 49 C. J. 781 and authorities cited; Nelson v. Hall, *supra;* Evans v. Kloeppel, 72 Fla. 73 South. Rep. 180.

The plea, however, did not present an immaterial issue. The majority opinion undertakes to treat the trial of the issue presented as a demurrer to the plea as one setting up no defense, and in effect enters a judgment which the trial court was forbidden to enter on the issues joined. · That course in substance sets up a different case for the parties from that presented to the trial court and determines the controversy upon a principle not applicable.

The doctrine of *"res judicata"* so learnedly discussed in the majority opinion upholds the principle contended for by the defendant that the facts alleged in the declarations of the two cases constitute, if true, one breach of the covenant in the bond upon which the defendant, if liable at all, had to respond; that the amount due for partitions and furring materials and the amount due for roofing material, although due upon different transactions between the plaintiff and the Fleisher Construction Company, constituted but one demand or debt recoverable in one action against the Construction Company and which was due and payable when the first action was brought. The failure to make that payment, the failure of the Construction Company to pay that debt to the Gypsum Company constituted the breach of the covenant in the bond upon which it is contended the defendant Surety Company was liable. So the

two actions were for damages for one breach of the covenant.

It is a principle of law, however, which the majority opinion ignores that breaches of the same covenant which have occurred up to the time of bringing the first action must be sued for therein and cannot be made the basis of separate actions. See 34 C. J. 848.

It is a well established rule of law that a single cause of action cannot be split in order that separate suits may be brought for the various parts of what really constitutes but one demand. Such is the rule as established by many decisions in the jurisdictions of New York, Virginia, Pennsylvania, Missouri, Massachusetts, Alabama, North Carolina, Ohio, Illinois, Georgia and other States, United Supreme Court and England. The reason for the rule, as stated in 1 Ency. Pl. and Prac. 149, is one of substantive law and has its foundation in two maxims: *Interest rei publicae ut sit finis lituum"* and *"Nemo debet bis vexari pro una et eadam cause."* 1 Ency. Pl. and Prac. 150.

What constitutes an entire cause of action within the meaning of the rule is often a different question and it depends upon the facts in each particular case.

The covenant upon which the defendant Surety Company was liable was single. It obligated the Company to pay all persons who had contracts directly with the Fleisher Construction Company for labor or materials. The Gypsum Company had two contracts with the Fleisher Company, but when the first action was brought both contracts had been executed by the Gypsum Company and the amount due to it upon each contract constituted a single demand. Each contract required the Gypsum Company to furnish materials and labor upon the same building which the Fleisher Company as contractor was building for Bishop Barry. There was only one account consisting of the items

furnished under two contracts. They were not specialties or sealed instruments, but simple contracts consisting of a written proposition and acceptance. When the work was done and the materials furnished under each it became a demand which merged into and became part of the entire debt due on both accounts. The failure to pay that demand gave rise to the Surety Company's liability upon the covenant.

The circumstances constituting the transaction, or what may be said to be a single demand, was peculiarly a jury question. The facts were submitted to the court or judge in place of a jury. If the demand was single, if the amount due under each contract were due when the first action was brought the demand was single and there was only a single breach of the covenant. If that is true then the unreversed judgment of the Circuit Court in the first suit constitutes an estoppel to the prosecution of the second. It is the law of the case. See Bendernagle v. Cocks, 19 Wend. (N. Y. C. L. R.) 206; Mitchell v. Gillespie, 25 Ga. 346; Reid v. Huston, 55 Ind. 173; Osborne v. Atkins, 6 Gray (Mass.) 423; Taylor v. Heitz, 87 Mo. 660; Joyce v. Moore, 10 Mo. 271.

The two actions rested upon a breach of the covenant sued upon. The failure to pay the amount due on each contract was, it is assumed, a breach of the covenant. Therefore, when the first action was brought the amount due on each contract, even considered as a separate demand against the Construction Company, were two breaches of the same covenant, but both could be satisfied in one action against the Surety Company. The plaintiff was not permitted under the rule above announced to split the action against the Surety Company and sue it in two separate actions. The judgment in the first action, therefore, could be pleaded as a defense against the second. The cases cited

above sustain that doctrine. There seem to be none to the contrary. The principle announced is of ancient origin and has been applied without variation so far as I have been able to discover.

The parties in the two actions are the same. The subject matter, the breach of the covenant, is the same in both cases, and the time and occasion for the settlement of the entire damage accrued almost simultaneously and many months before bringing the first action. The plaintiff thus had its day in court, acquiesced in the judgment rendered against it by not taking a writ of error to the first judgment against it within the time allowed by law. There had been no new or subsequent breach of the covenant.

The plaintiff can have but one action for that breach of the covenant and the judgment in the first suit is a perfect bar to recovery in the second. Osborne v. Atkins, *supra*.

This Court in the case of United States Gypsum Co. v. Columbia Casualty Co., 111 Fla. 526, *supra,* referred to herein, had before it merely the question whether the failure of the Fleisher Construction Company to pay the United States Gypsum Company for the roofing materials and work constituted a breach of the covenant in the bond enabling the Gypsum Company to sue the Casualty Company as surety thereon for the breach. It decided that question in the affirmative.

That may be a correct decision of the question as presented in that appeal, but it by no means can be construed to work a reversal of the doctrine that there can be but one action for a breach of the one covenant. The point was not before the Court. It may be that the Circuit Court's judgment in the first case is different from the Supreme Court's judgment in the second as to the liability of the Casualty Company on the bond, but it cannot work a reversal of the first judgment, which has become the law of the case as the

plaintiff is entitled to but one action for the breach of the covenant.

In fact and in law, the decision of this Court was in a moot case in that the plaintiff was not entitled to maintain the second action for breach of the covenant and the trial court could have been by writ of prohibition prevented from proceeding in the case because, even if there have been several breaches of one and the same covenant already committed, which was the case when the first action was brought, there can be but one action for such breaches all of which merge in the one action.

The plaintiff could no more split the demand for damages for the several breaches of the covenant than it could split an entire debt into several to give an inferior court jurisdiction in *"fraudem legis."* For the purpose of the action for the breaches of the covenant which had already occurred, the several demands make but one demand. "It is the same thing, in effect, whether the splitting of this demand be restrained by prohibition or in bar of the second." Bendernagle v. Cocks, *supra.*

The judgment, I think, should therefore be affirmed.

BROWN, J., concurs.