354 So.2d 372 (1977)
MOBIL OIL CORPORATION, Shell Oil Company, Marathon Oil Company, Continental Oil Company, Phillips Petroleum Company, Atlantic Richfield Company and Cities Service Company, Appellants,
v.
Robert L. SHEVIN, Attorney General, State of Florida, Appellee.
No. 51287.
Supreme Court of Florida.
December 8, 1977.
Rehearing Denied February 22, 1978.
*373 Andrew J. Kilcarr and Maureen O'Bryon of Donovan, Leisure, Newton & Irvine, Washington, D.C., Thomas R. Trowbridge, III, Charles F. Rice, New York City, and John A. Madigan, Jr. and Jack M. Skelding, Jr., of Madigan, Parker, Gatlin, Swedmark and Skelding, Tallahassee, for appellants.
Robert L. Shevin, Atty. Gen., and William C. Sherrill, Jr., Chief Trial Counsel and Charles R. Ranson, Asst. Atty. Gen., Tallahassee, for appellee.
*374 ENGLAND, Justice.
This case is brought to us on direct appeal from an order of the Leon County Circuit Court holding that the Attorney General of the State of Florida had autonomous authority to initiate a federal antitrust lawsuit in federal court on behalf of the state and its agencies, or alternatively that such authority was retroactively conferred by a resolution of the Florida Cabinet.[1] The trial court action was instituted by Mobil Oil Corporation and six other oil companies (collectively "Mobil") for declaratory and injunctive relief to prevent the Attorney General from continuing his prosecution of an ongoing federal antitrust suit against them, in which the identical question as to his authority had been decided adversely to them by the Fifth Circuit Court of Appeals.[2]
The threshold question for our determination is raised on a cross-assignment of error by the Attorney General, who contends that his motion to dismiss this action in the circuit court should have been granted on the ground of collateral estoppel. We agree. Collateral estoppel, or estoppel by judgment, is a judicial doctrine which in general terms prevents identical parties from relitigating issues that have previously been decided between them.[3] The essential elements of the doctrine are that the parties and issues be identical,[4] and that the particular matter be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction.[5] All of these elements are present here.
Mobil does not contend that the parties or issues are different in this proceeding from the parties and issues in the Fifth Circuit Court of Appeals. Rather, it argues that collateral estoppel is inapplicable because the federal court decision was not "final". For this proposition, Mobil relies on a statement in the majority opinion of the Fifth Circuit suggesting that the court's evaluation of the Attorney General's authority was merely tentative because "only the Florida Supreme Court can decide this state law question in a manner that is, by definition, correct."[6]
The position Mobil asserts is untenable. Notwithstanding any acknowledgment of this Court's preeminence on questions of Florida law, there is nothing tentative about the Fifth Circuit's decision that, as between these parties, the Attorney General of Florida had standing to initiate and prosecute this federal antitrust suit. Of controlling significance is the legal effect of that court's determination, not what was incidentally said. Mobil does not deny that the issue of the Attorney General's authority was fully and effectively litigated in a proceeding which culminated in a written opinion of the Fifth Circuit Court of Appeals, nor that certiorari was sought to review that decision in the United States Supreme Court and denied. It necessarily follows, then, that as between these parties in this lawsuit, that issue is conclusively determined.[7]
Mobil does not suggest that the same issue could be relitigated in any other federal court, or in the courts of any other jurisdiction. It contends, however, that the *375 issue can be relitigated in Florida because the Florida Supreme Court has the ultimate authority to decide the standing of the Attorney General of Florida to initiate lawsuits, and for that reason the Florida Supreme Court should be given an opportunity to speak to that issue. We find no fault with the first part of Mobil's contention, and if the matter came to us in a proper case there is no doubt that our decision on our Constitution's grant of authority to the Attorney General of Florida would be binding precedent not only in Florida but in any other jurisdiction where the question might later be litigated.[8] That fact, however, does not substantiate Mobil's conclusion that we should now address the issue. The Fifth Circuit's determination that the Attorney General had standing to initiate this federal anti-trust litigation does not bind this Court to a like determination in any other proceeding.[9] Consequently, that decision neither presents a reason for us to pass on the issue nor poses a threat to our jurisprudence if we do not.
Our action in this cause follows well-established doctrine. As a matter of comity, courts of competent jurisdiction have routinely applied the law of other jurisdictions when required to do so for the purpose of their own litigation.[10] Collateral estoppel has traditionally operated to preclude litigants from relitigating the same issue not only in the same, but as well in a different forum.[11] Clearly, then, the Fifth Circuit's decision is the law of this case.[12]
Some years ago, the State of Florida initiated the process of "certification", by which federal appellate courts may certify to this Court questions of Florida law that are "determinative of [the] cause" and for which there are "no clear controlling precedents" in the decisions of this Court.[13] Before that jurisprudential innovation, it was common for federal courts to resolve issues of Florida state law in proceedings which required such determinations. There was, of course, the doctrine of abstention, by which the federal courts voluntarily declined to pass on unsettled questions of state law and directed the parties to file a declaratory proceeding in the state court system for a definitive resolution of the issue.[14] The certification process was initiated to eliminate both the expense and delay of abstention, by permitting the federal litigation *376 to be abated while the doubtful question of state law was referred directly to the highest state court for resolution.[15] As a tool of federal-state comity, the certification process has been well-received, and is now used generously in the federal system where permitted by state law.[16]
The opportunity to certify to us the question of the Attorney General's legal authority to institute a federal anti-trust suit was presented to the Fifth Circuit by Mobil.[17] The court expressly declined the invitation, stating among other reasons that the point of law to be resolved on the basis of existing Florida law "does not seem ... an extremely close one."[18] Mobil does not suggest that the Fifth Circuit's decision not to certify a question is reviewable  plainly it is not[19]  yet this lawsuit in state court is tantamount to a collateral attack on the Fifth Circuit's exercise of its certification discretion. To permit that attack would invite serious problems of comity.[20]
At the present time there are at least three initiatives available to a federal litigant faced with an unsettled question of state law. The litigant can, of course, have the matter resolved in the federal proceeding and be bound by the result in that lawsuit. Alternatively, the litigant can request the federal appellate court to use the certification process (where it is available) to obtain a definitive resolution from the highest state court. The federal appellate court may, but need not, choose to certify the particular issue; but if it does, the state court's answer resolves the issue not only for that lawsuit but for all future litigants, state and federal. There is, as well, a third alternative for litigants. The litigants can request the federal trial court to stay its proceeding while a declaration of state law is obtained from the state courts. Since certification is not available from federal trial courts (at least in Florida)[21] and no final judgment will have been entered at this early stage of the proceeding, the litigant would then be free to seek a binding resolution of the question in the state court system.[22]
The third alternative was available to Mobil. The federal trial court in fact entered a stay, ostensibly to allow the Attorney General to pursue a declaratory action in the state court system on the question of his authority. He declined, and instead filed an abortive appeal in the federal appellate court.[23] The opportunity was open to Mobil during that stay to have commenced the state declaratory action which it later initiated and now brings here. Apparently *377 choosing to risk a federal court resolution of the question, Mobil is and should be bound both by its own tactical decision and by the federal court's ruling.
The doctrine of collateral estoppel bars our present consideration of whether the Attorney General possessed autonomous authority to initiate an antitrust lawsuit in federal court. The trial judge erred in denying the Attorney General's motion to dismiss the state court proceeding, and this case is remanded to that court for the purpose of entering an order dismissing with prejudice the declaratory action brought by Mobil Oil Corporation and the other appellants.
It is so ordered.
OVERTON, C.J., BOYD, SUNDBERG and HATCHETT, JJ., and DREW (Retired), J., concur.
KARL, J., dissents.
NOTES
[1] Jurisdiction here is predicated on the trial court's construction of provisions of the Florida Constitution. Art. V, § 3(b)(1), Fla. Const.
[2] State of Florida ex rel. Shevin v. Exxon Corp., 526 F.2d 266 (5th Cir.), cert. denied, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (1976). Ten of the seventeen oil companies which are parties to the federal court action are not participating in this collateral litigation.
[3] Gordon v. Gordon, 59 So.2d 40 (Fla.), cert. denied, 344 U.S. 878, 73 S.Ct. 165, 97 L.Ed. 680 (1952).
[4] See, e.g., Seaboard Coast Line R.R. Co. v. Cox, 338 So.2d 190 (Fla. 1976).
[5] See, e.g., Gray v. Gray, 91 Fla. 103, 107 So. 261 (1926), where the doctrine of estoppel by judgment is distinguished from the doctrine of res judicata.
[6] 526 F.2d at 274.
[7] In re Sanford Fork and Tool Co., 160 U.S. 247, 16 S.Ct. 291, 40 L.Ed. 414 (1895). See also IB Moore's Federal Practice para. 0.404[10] at 571 (2d ed. 1974).
[8] U.S.Const., art. IV, § 1. See, e.g., Newton v. Newton, 245 So.2d 45 (Fla. 1971).
[9] Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Hunter v. City of Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907); State v. Dwyer, 332 So.2d 333 (Fla. 1976); Miles Laboratories, Inc. v. Eckerd, 73 So.2d 680 (Fla. 1954); Wright, The Federal Courts and the Nature and Quality of State Law, 13 Wayne L.Rev. 317, 323 (1967). We recognize, of course, that state courts are bound by federal court determinations of federal law questions. See, e.g., Ratner v. Arrington, 111 So.2d 82 (Fla.3d DCA 1959).
[10] See, e.g., Hartford Accident & Indem. Co. v. City of Thomasville, 100 Fla. 748, 130 So. 7 (1930). See also the definition of "comity", Black's Law Dictionary 334 (rev. 4th ed. 1968), and Restatement (Second) of Conflict of Laws § 2, Comment a(3) (1971).
[11] See United States Gypsum Co. v. Columbia Cas. Co., 124 Fla. 633, 169 So. 532 (1936).
[12] Id. See also note 7 above.
[13] Fla.App.R. 4.61. Certification was initiated by statute which authorized Supreme Court implementation by rule. Ch. 23098, § 1, Laws of Florida (1945), subsequently reenacted in its present form as § 25.031, Fla. Stat. (1975), by Ch. 57-274, Laws of Florida. Our rule was adopted in In re Florida Appellate Rules, 127 So.2d 444 (Fla. 1961). The certification procedure was thoroughly discussed, and its constitutionality upheld, in Sun Ins. Office, Ltd. v. Clay, 133 So.2d 735 (Fla. 1961).
[14] First utilized in Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), this "well-established procedure" has been the focal point of much attention both in the opinions of the United States Supreme Court, see, e.g., Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); and in the literature of the profession. See, e.g., Kurland, Toward a Co-operative Judicial Federalism: The Federal Court Abstention Doctrine, 24 F.R.D. 481 (1960); Wright, The Abstention Doctrine Reconsidered, 37 Tex. L.Rev. 815 (1959); Note, Abstention: An Exercise in Federalism, 108 U.Pa.L.Rev. 226 (1959).
[15] See Note, Florida's Interjurisdictional Certification: A Reexamination to Promote Expanded National Use, 22 U.Fla.L.Rev. 21 (1969).
[16] See Lehman Bros. v. Schein, 416 U.S. 386, 390 & nn. 5-7, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974), resulting in a certification of the legal issues ultimately resolved in Schein v. Chasen, 313 So.2d 739 (Fla. 1975).
[17] 526 F.2d at 274.
[18] Id. at 275.
[19] Lehman Bros. v. Schein, 416 U.S. 386, 392-95, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974) (Rehnquist, J., concurring).
[20] At oral argument, Mobil's counsel conceded some uncertainty as to how a favorable determination from this Court would be of any practical benefit to its position in the federal litigation.
[21] Both the rule (Fla.App.R. 4.61) and the statute (§ 25.031, Fla. Stat. (1975)) limit availability of certification to federal appellate courts. A concise treatment of the purposes underlying this limitation may be found in Note, Inter-Jurisdictional Certification: Beyond Abstention Toward Cooperative Judicial Federalism, 111 U.Pa.L.Rev. 344, 360-61 (1963).
[22] There are two additional alternatives available to the federal appellate courts but not the litigants. There are, of course, one or more forms of abstention. Also, as in Lee v. Bickell, 292 U.S. 415, 426, 54 S.Ct. 727, 78 L.Ed. 1337 (1934), and in Glenn v. Field Packing Co., 290 U.S. 177, 179, 54 S.Ct. 138, 78 L.Ed. 252 (1933), the appellate court could expressly leave open the possibility of modifying its decision if a later state court determination is made to the contrary. The Fifth Circuit Court of Appeals in this case neither abstained nor authorized a re-opening of its decision.
[23] This appeal was dismissed without opinion by the Fifth Circuit for lack of a final order. 526 F.2d at 267-68.