SMITH, Chief Judge.
The City of Valparaiso (Valparaiso) appeals an order denying its motion for further relief seeking allocation of one-third of the expanded capacity of the Niceville, Valparaiso, Okaloosa County Sewer System. We affirm.
Niceville, Valparaiso, and Okaloosa County entered into a trilateral agreement to build a sewer system. With the help of considerable funding from the Environmental Protection Agency, the sewer system was constructed. Each entity made monetary contributions for the initial construction of the treatment facility in accordance with their pro rata share of allocated capacity: Valparaiso, $500,000.00; Niceville, $1,100,000.00; Okaloosa County, $400,-000.00. Operation and control of the sewer system was turned over to the Niceville, Valparaiso, Okaloosa County Regional Sewer Board (Sewer Board), a six-member board established by agreement of the three entities involved, with two representatives from each owner. Among other things, the agreement provided:
*754 (g) The board shall have the power and authority to do all things necessary and reasonable incident to the businesslike operation and maintenance of the facility herein including but not limited to the hiring of necessary personnel, setting salaries, purchasing materials, letting contracts for engineering and construction services for necessary additions and alterations to the facility, ... (emphasis supplied)
Initially, the plant was constructed to handle and the owners were allocated the following capacity: Valparaiso — 500,000 gallons per day (gpd); Niceville — 1,100,000 gpd; Okaloosa County — 400,000 gpd. However, the area serviced by the regional sewer system experienced rapid growth and the need arose to expand the facility. Valparaiso disputed the Sewer Board’s authority to expand the system and in 1984, filed suit seeking declaratory and injunc-tive relief. The trial court was asked to determine:
1. Who owns the regional sewer system?
2. How is the sewer system operated?
3. How are decisions made as to the alterations proposed to be made to the system?
4. What are the rights of the 3 owners as to proposed alterations?
5. What are the responsibilities of the 3 owners as to proposed alterations?
6. What is the status of the agreement between the Sewer Board and Polyen-gineering [the engineer on the project] and what are the obligations of the 3 owners as to that agreement?
Construing the owners’ 1974 trilateral agreement and supplemental agreement which the owners entered into in 1980, as well as the articles of incorporation and bylaws of the Sewer Board, the trial court found that before the Sewer Board could enter into a contract for services incident to any alterations or expansions of the system, the owners seeking alterations must agree to pay their pro rata share of the costs of the alterations, including engineering fees. The court said:
The Sewer Board, after it has followed the correct preliminary procedures, as outlined above, is then required to give all members of the system a reasonable opportunity to join in the proposed alteration and to enter into an agreement to pay their pro-rata share of the costs of such expansion based upon their apportioned capacity in the expansion as compared to the total capacity in the expansion, not including any capacities existing prior to the expansion. Then the Sewer Board, with indemnity agreements in hand, can contract with an engineering firm for the necessary surveys and studies to determine the scope of the proposed alterations. The Sewer Board would then have the discretion to make the final determination, by majority of vote of its Board pursuant to its By-Laws, of the extent of the alterations to be made. This decision would only be subject to review by the Courts if there was an abuse of their discretion and/or there was a lack of substantial compliance with the trilateral agreement, as supplemented, and the By-Laws of the Sewer Board, (emphasis supplied)
The court found that Niceville, Valparaiso, and the County each owned one-third of the regional sewer system, a determination based, apparently, upon the intention of the parties to the undertaking rather than their actual ownership interests in the real property upon which the plant is situated, or their actual capital contributions to acquisition of the plant. However, the system is operated by the Sewer Board. The court specifically adjudged:
3. The Board of Directors of the Sewer Board have the authority to determine whether and to what extent expansions to the system should be made, after receiving a proper request from one or more of its members. If they abuse that discretion or fail to follow correct procedures, their actions are subject to review by the Courts.
4 & 5. The owners have a right to request alterations to be made to the system to meet their growing needs provided they agree to pay their pro-rata *755 share of the costs of such alterations. If the Sewer Board decides to proceed on such a request, notice must be given to the other owners of- this decision and they must be afforded a reasonable period of time within which to elect to join in the expansion with their own additional request and they must likewise agree to pay their pro-rata share of the costs of such alterations, pro-rata shares being determined by the respective percentages of the alterations, (emphasis supplied)
The court concluded by reserving jurisdiction for the purpose of entering such further orders as may be necessary. This final judgment was not appealed.
Thereafter, the Sewer Board obtained the written agreement from Niceville and Okaloosa County to pay their share of engineering feasibility studies and contracts and to pay their pro-rata share of expansion costs pro-rata to capacity to be allocated. At this point, Valparaiso contended that it was entitled to be allocated one-third of the proposed expansion of the sewer system, as opposed to the Board’s position that it was only entitled to a pro-rata share of the expansion based on the capacity to be allocated by the Sewer Board. While this dispute continued, the Sewer Board approved a two-phase expansion of the system to increase treatment capacity by the total of 1.35 million gpd. Phase I will increase treatment capacity by 350,000 gpd, and Phase II will add an additional 1,000,-000 gpd capacity. Based upon feasibility studies projecting population growth and the future sewage needs of each of the system’s three owners, the Sewer Board voted to allocate all of the Phase I capacity to Okaloosa County, as the county’s need was critical. Of the Phase II capacity, Okaloosa County was allocated 559,850 gpd, Niceville, 360,600 gpd, and Valparaiso, 79,550 gpd. When Valparaiso learned of the Sewer Board’s proposed allocations, it filed a motion for further relief maintaining that it should be allocated one-third of the additional capacity as it requested.
Valparaiso does not dispute that for the period it covers, the feasibility study upon which the board relied in making its allocations accurately reflects the growth and sewage needs of Valparaiso. But Valparaiso points out these projections extend only through the year 2005. Because the sewer system has a useful plant life of 40-50 years, or through the year 2030, Valparaiso contends that a more reasonable approach would be for the Sewer Board to adopt an allocation plan which examines the owners’ needs for the life of the system.
Two hearings were held. Contrary to the position taken by Valparaiso, expert testimony introduced by appellees showed that rather than basing allocations on the owners’ needs for the life of the system (a 40-50 year period), a more sound engineering practice would be to allocate capacity using a twenty-year planning period. Otherwise, existing users of the system would be unduly burdened, as they would have to build and operate a plant with a great amount of excess capacity which would not be used for many years to come. Also, according to appellees’ expert, the risk, of obsolescence is exacerbated by using a longer planning period. After hearing this evidence, the trial court entered an order denying Valparaiso’s motion for further relief.
On appeal, Valparaiso continues to maintain that it is entitled to an allocation of one-third of the capacity of the proposed expansion of the sewer system. It contends: (1) the trial court erred by disregarding its one-third ownership interest in the regional sewer system; (2) the trial court erred by allowing the Sewer Board to determine the wastewater treatment needs of Valparaiso; (3) the Sewer Board’s action was an abuse of discretion; and (4) the trial court should have proportioned the expansion costs in accordance with the percentage that Valparaiso’s apportioned capacity in the expansion bears to the cost of the entire facility, rather than as ordered by the trial court in its previous final judgment (owners to pay their pro rata share of the costs of such expansion based upon their apportioned capacity in the expansion as compared to the total capacity in the expansion, not including any capacities existing prior to the expansion).
*756 We find no merit in Valparaiso's contentions, and agree with appellees that they are refuted, for the most part, by the terms of the written agreements of the parties, as construed by the 1985 final judgment which has not been appealed. We therefore limit our discussion to the following observations.
While sewage treatment is a municipal function, Peoples Water Service v. Adkinson, 184 So.2d 707 (Fla. 1st DCA 1966), the city may delegate to a board the administration of its sewage system. 56 Am.Jur.2d, Municipal Corporations, § 196. In the 1974 agreement, Valparaiso agreed and delegated to the Sewer Board the control and operation of the sewer system. When asked to declare Valparaiso’s rights under this agreement and the 1980 supplemental agreement, the court specifically adjudged that the Sewer Board had the authority to determine “whether and to what extent” expansions to the system should be made. This authority necessarily implies the authority to allocate the expanded capacity among the owners. Valparaiso did not appeal the trial court’s final declaratory judgment, and is barred by the doctrine of estoppel by judgment from continuing to question the authority of the Sewer Board to allocate capacity.
The doctrine of estoppel by judgment is an equitable principle which prevents the same parties from continuing to relitigate issues that have previously been decided between them. Gordon v. Gordon, 59 So.2d 40 (Fla.1952), cert. den., 344 U.S. 878, 73 S.Ct. 165, 97 L.Ed. 680 (1952); and Mobil Oil Corp. v. Shevin, 354 So.2d 372 (Fla.1977). The trial court below determined in its unappealed final judgment that the Sewer Board had the authority to allocate capacity in an expansion to the sewer system; it therefore was not required to reconsider this same issue again in this proceeding. Instead, as the final judgment itself specifically pointed out, the Sewer Board’s final determination allocating capacity was subject to review by the trial court and subject to correction only if there was an abuse of discretion. As we have previously noted, there were two hearings in this cause, at which appellees introduced competent, substantial evidence supporting the Board’s allocation. Implicit in the trial court’s denial of the motion for further relief was a determination that the Sewer Board had not abused its discretion in the allocations it made, a determination we find supported by competent, substantial evidence in the record. The evidence demonstrates that, for the planning period involved, Valparaiso will receive the sewage capacity that it needs, and it is only being asked to pay for the sewage capacity that it is getting.
Finally, the unappealed 1985 final judgment conclusively determined the method of allocating costs for the expansion to the sewage system. According to the final judgment, Valparaiso must pay its pro rata share of the costs of such expansion based upon its apportioned capacity in the expansion as compared to the total capacity in the expansion, not including any capacities existing prior to the expansion.
Accordingly, the trial court’s order denying the motion for further relief is AFFIRMED.
BOOTH and NIMMONS, JJ., concur.